A98A1941. MOLARO v. THE STATE.
(510 SE2d 886)

Judge Harold R. Banke.

Michael J. Molaro was convicted of possession with intent to distribute amphetamines. Molaro asserts three errors.

During an undercover surveillance operation of a shopping center parking lot, investigators observed Molaro arrive at 10:30

---

p.m., after most businesses had closed. *Blackwell v. State*, 229 Ga. App. 452 (494 SE2d 269) (1997). One officer testified that the location was a "high crime" area. After Sergeant Douglas Oliver observed Molaro park in the middle of the lot, lock his Toyota, then start to walk toward an Arby's, he decided to follow Molaro in an unmarked pickup truck. A Suzuki Samurai entered the lot and proceeded toward Molaro who climbed inside. The Samurai drove through the Arby's then parked next to Molaro's Toyota. Molaro exited the Samurai, left his door open, and sat down. Oliver testified that at this point he was "very suspicious" believing that "they could have been doing a dope deal" or were scheming to attempt to rob one of the businesses at closing. According to Oliver, he had observed drug deals transacted in a similar manner: participants meeting in separate vehicles out in the open, getting into one vehicle, and returning to the other.

Based on the time of night, his personal observations of Molaro's actions, and his knowledge of drug deals, Oliver decided to investigate. By radio, Oliver informed the two backup officers located in another truck that he was going to pull his vehicle up in front of the two cars and approach. Oliver parked about seven or eight feet away then walked toward Molaro. As he did so, he observed Molaro removing something from the console. Oliver displayed his badge, identified himself, and asked Molaro to "stay put" or remain where he was. Instead, Molaro immediately jumped out of his car and rushed toward the Samurai, where he hurled a small plastic bag through the Samurai's open passenger door. Due to Molaro's sudden movement after he had been requested to "stay put," Oliver's backup, also in street clothes, drew his service weapon, identified himself, and instructed Molaro to freeze. The trial court determined that the officers had "sufficient particularized facts to cause them to be suspicious," to justify an inquiry and a brief detention.

When the driver of the Samurai, Jeffrey Rodgers, was interrupted by police, he was in the process of counting his money and deciding how much "speed" he wanted to buy from Molaro. Rodgers still had $650 clenched in his hand. The bag Molaro tossed contained amphetamines worth $700 to $800. Police confiscated a pager and $483 cash from Molaro.

Rodgers testified that after he contacted Molaro to buy some "speed," Molaro agreed to meet him at this parking lot. An Ohio incident in which Molaro had tossed a duffle bag containing over two pounds of marijuana and a set of scales out a car window during a high speed chase was admitted as similar transaction evidence. *Held*:

1. Molaro contends that the trial court erred in denying his motion to suppress. Unless clearly erroneous, a trial court's findings on disputed facts and witness credibility at a suppression hearing

must be accepted. *Fulton v. State*, 192 Ga. App. 693, 695 (1) (385 SE2d 777) (1989); see *Ledford v. State*, 220 Ga. App. 272, 273 (469 SE2d 401) (1996).

Although we question whether Molaro had standing to object to the search of another person's vehicle, we need not reach that issue because after Molaro discarded or abandoned his property by throwing it away, he no longer could claim a reasonable expectation of privacy with regard to it. *Mann v. State*, 196 Ga. App. 730, 731 (1) (397 SE2d 17) (1990); *Walker v. State*, 228 Ga. App. 509, 510 (1) (493 SE2d 193) (1997). Constitutional protections do not encompass abandoned or voluntarily discarded property. Id.

Nor did the officer's actions violate Molaro's Fourth Amendment rights. An investigating officer need not have "articulable suspicion" before he can approach a stopped vehicle and talk with the driver. *Crosby v. State*, 214 Ga. App. 753, 754-755 (449 SE2d 147) (1994); see *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997). No seizure occurs simply because a police officer approaches an individual and asks a few questions. *Rogers v. State*, 206 Ga. App. 654, 656-657 (1) (426 SE2d 209) (1992). Moreover, a brief investigatory stop of a suspicious individual in order to determine his identity or obtain information may be reasonable under the facts known to the officer. *Eisenberger v. State*, 177 Ga. App. 673, 675 (2) (340 SE2d 232) (1986). From these facts, it appears that Molaro was merely approached while voluntarily stopped. *Crosby*, 214 Ga. App. at 755; see *O'Donnell v. State*, 200 Ga. App. 829, 830 (1) (409 SE2d 579) (1991). Compare *Vansant v. State*, 264 Ga. 319, 320-321 (2) (443 SE2d 474) (1994) (police lacked requisite particularized basis to stop driver of moving vehicle). Only after Molaro behaved in a furtive or bizarre manner did another officer draw a gun and issue a command, escalating the situation from what had initially begun as a low level police-citizen encounter. See *Aranda v. State*, 226 Ga. App. 157, 158 (1) (486 SE2d 379) (1997). The trial court's ruling on the motion to suppress was supported by evidence and was not clearly erroneous. *Fulton*, 192 Ga. App. at 695 (1).

2. Molaro contends that the court erred in admitting evidence of the Ohio incident arguing that it was dissimilar in that it concerned two pounds of marijuana and not nineteen grams of amphetamines, was geographically remote, and involved a high speed chase instead of a parked car.

The State offered the Ohio transaction to show Molaro's similar course of conduct and bent of mind in that while possessing illegal drugs with an intent to distribute, when confronted or cornered by police, Molaro would throw the drugs away. See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). A similar transaction need not be identical to be admissible. *Woods v. State*, 224 Ga. App.

52, 55 (3) (479 SE2d 414) (1996). The Ohio incident was relevant to show a common design or course of conduct from which a jury could infer that Molaro both possessed and intended to distribute illegal drugs. See id. The prior incident was sufficiently similar to the charged offense. *Burkett v. State*, 230 Ga. App. 676, 678 (2) (497 SE2d 807) (1998). We find no error. *White v. State*, 225 Ga. App. 74, 76 (2) (483 SE2d 329) (1997).

3. Molaro contends that the court erred by failing to give on its own initiative a contemporaneous limiting instruction when the similar transaction evidence was introduced and by failing to narrow its general charge on similar transaction evidence. Where a trial court does not give a contemporaneous limiting instruction at the time of the admission of the evidence, and none is requested, reversal is not mandated. *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998).

The court explicitly instructed the jury that Molaro was being tried solely for the offense of possession of amphetamines with intent to distribute as charged in the indictment. The court restricted the use of the similar transaction evidence as follows: "[s]ometimes evidence is admitted for a limited purpose. The Ohio information was presented to you for such a limited purpose. Such evidence may be considered by the jury for the sole issue or purpose to which it is limited — and I'm going to instruct you on that limiting purpose. You may not consider it for any other purpose." The court gave the pattern charge on similar transactions modifying it by omitting the inapplicable portions: "location in time or place" and "identity of the perpetrator." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, pp. 24-25. Having reviewed the charge as a whole, we find that it substantially presented the issues and was unlikely to have confused or misled the jury. *English v. State*, 202 Ga. App. 751, 757 (10) (415 SE2d 659) (1992).

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 14, 1999.

*Jill L. Anderson, Mary Erickson*, for appellant.
*David McDade, District Attorney, Stephen L. Corso, Assistant District Attorney*, for appellee.