## A01A1999. COLE v. THE STATE.
### (562 SE2d 720)

ANDREWS, Presiding Judge.

Jason Neil Cole was found guilty of possessing methamphetamine and marijuana found during a search of his car conducted by police after he was stopped for a traffic offense. He appeals claiming the search was illegal and that the trial court erred by denying his motion to suppress the search results. Because we conclude the traffic stop and detention were legal and that Cole voluntarily consented to the search, we affirm.

The following testimony was given at a hearing before the trial court on Cole's suppression motion. After stopping Cole for failure to properly maintain his lane, Officer Smith noticed the smell of marijuana coming from the interior of Cole's car. He observed that Cole was shaking, acting nervous, and had watery, bloodshot eyes. When the officer told Cole he smelled marijuana, Cole became even more nervous and agitated. Based on these observations, the officer suspected Cole might be under the influence of marijuana and asked him to step out of the car so he could observe him on his feet. The officer stated that Cole appeared steady on his feet and that, other than bloodshot eyes, he appeared to be "okay."

Still suspecting there might be marijuana in the car, the officer asked Cole for consent to search the car. When Cole refused to give consent, the officer asked for consent a second time telling Cole, "[t]his will only take five minutes to satisfy my suspicions of smelling the odor of marijuana, you're telling me nothing is in the vehicle, then why do you have a problem with me searching it." When asked if he then told Cole he could go get a drug dog to come out and sniff the car, the officer testified that he could not recall whether or not he made that statement to Cole, that it was possible he did so, but he did not write down in his report that he did so. The officer further testified that, although he believed Cole was free to leave after he refused the first request for consent to search, Cole consented when he asked the second time. The methamphetamine and marijuana were found under the driver's seat of the car during the search.

1. Cole does not challenge Officer Smith's authority to stop him for the traffic offense, but claims the detention and investigation that led to the search were unwarranted. There is no merit to this claim. When the officer smelled marijuana and observed Cole's appearance and demeanor, he had reasonable, articulable suspicion under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), to detain Cole to investigate whether he was driving under the influence of marijuana or was in possession of marijuana.

2. Similarly, there is no merit to claims that the search was involuntary because the officer told Cole he could go get a drug dog or

that the search was the product of an illegal detention because the officer believed Cole was free to leave after he initially refused to consent to the search.

In ruling that Cole's consent to the search was voluntary, the trial court found no basis for the claim that the officer made a statement to Cole about getting a drug dog to coerce the consent. The trial court noted that Officer Smith testified he could not recall telling Cole he could get a drug dog and that this testimony was supported by the fact that the officer did not write in his police report that he made any such comment. Based on this evidence, the trial court concluded that "no affirmative testimony by Smith or statements in Smith's police report support [the claim] that Smith threatened Defendant with a drug dog . . . if Defendant did not consent." Cole did not testify at the hearing, and he never said that the officer made any statement to him about a drug dog. Accordingly, the only evidence before the trial court about the alleged drug dog statement was the officer's testimony that he could not recall making such a statement, but it was possible he did so.

Although the State had the burden of proving that the consent to search was voluntary, it was not necessary for the State to produce additional evidence affirmatively disproving the possibility that the officer might have made the statement about a drug dog. Rather, the State could simply argue that the statement was not made, and it was up to the trial court to consider the weight to be given the possibility that it was made. See *Anderson v. State*, 247 Ga. 397, 399 (276 SE2d 603) (1981). "On appeal of a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *Sprauve v. State*, 229 Ga. App. 478, 479 (1) (494 SE2d 294) (1997). Applying these principles, the evidence supports the trial court's finding that the officer made no statement about getting a drug dog.

Moreover, even if the officer did tell Cole that he could get a drug dog if he did not consent to the search, this did not constitute coercion that rendered the consent involuntary. The fact that the officer detected the smell of marijuana coming from the interior of the car was sufficient to create a reasonable suspicion that Cole had marijuana in the car. *State of Ga. v. Montford*, 217 Ga. App. 339, 340-341 (457 SE2d 229) (1995). At a minimum, this suspicion justified the officer's detention of Cole under *Terry v. Ohio*, 392 U. S. 1, to investigate the possible criminal activity and would have justified the officer's use of a drug dog within the scope of that investigation to sniff around the exterior of the car to see whether the dog detected

illegal drugs. *Montford*, 217 Ga. App. at 341. Having a trained dog sniff the exterior of a car is not a search within the meaning of the Fourth Amendment of the United States Constitution or Art. I, Sec. I, Par. XIII of the Georgia Constitution. Id. at 341. It follows that, even if the officer asserted he could get a drug dog, this was not an attempt to coerce consent by claiming he had lawful authority to search the car if Cole refused to consent. Compare *Bumper v. North Carolina*, 391 U. S. 543, 549-550 (88 SC 1788, 20 LE2d 797) (1968) (consent to search given in acquiescence to a claim of lawful authority is not considered voluntary).

Furthermore, the fact that the officer testified at the suppression hearing that he thought Cole was "free to leave" after he refused the officer's first request for consent to search does not establish that any continued detention was illegal. The officer's subjective belief that he lacked authority to detain Cole for continued investigation does not control where the facts objectively show the officer had such authority. *Farmer v. State*, 156 Ga. App. 837, 839 (275 SE2d 774) (1980). "Because we decide whether reasonable suspicion justifies a detention based on all the objective facts, we are not limited by the detaining officer's subjective opinions." *United States v. Jones*, 990 F2d 405, 408 (8th Cir. 1993), cert. denied, *Jones v. United States*, 510 U. S. 934 (114 SC 350, 126 LE2d 314) (1993). The objective facts established reasonable suspicion that there was marijuana in the car and justified Cole's continued detention regardless of the officer's subsequent testimony that he considered Cole "free to leave." Accordingly, the officer's continued investigation during which he eventually obtained Cole's voluntary consent to search was lawful.

Cole's consent to the search was voluntary, and the trial court correctly denied the motion to suppress the methamphetamine and marijuana found in the search.

*Judgment affirmed. Johnson, P. J., Ruffin and Ellington, JJ., concur. Eldridge, Miller and Phipps, JJ., dissent.*

ELDRIDGE, Judge, dissenting.

Because the consent to search obtained by Officer Smith was not voluntary, I must respectfully dissent.

1. After Officer Smith determined that Cole's failure to maintain a lane was not the result of being under the influence of marijuana, Smith decided to ask for consent to search Cole's car because he thought there might be marijuana there. Cole refused consent. It was then Officer Smith testified:

A: I wanted to inspect his vehicle and he stated no the first time. *So at that point I have nothing to hold him on, he's free to go. . . .*

Q: If when he said no to the consent and he had tried to leave, would he have been free to leave?
A: Yes, sir.
Q: Did you think you had anything to hold him on at that point?
A: No, sir.

(Emphasis supplied.) Smith did not tell Cole this, but instead asked again for consent to search. And it was during this second request — *after* Officer Smith had already determined that Cole was free to go — Smith testified that he might have threatened to get a drug dog if Cole did not consent to a search. Smith, in an admirably candid fashion, admitted that he had used such threat before with other detainees and possibly had used it in this instance:

Q: And then as far as asking him whether or not if he didn't consent, you'd go get a drug dog, you said that you've actually made that particular statement to people before?
A: Yes, sir.
Q: And you said that you didn't recall whether or not you made that statement to Mr. Cole?
A: No, sir.
Q: Okay. So you could have made that statement to him, is that what you're telling the Court?
A: It's possible, yes, sir.

The State has the burden to prove consent was freely and voluntarily given, and consent to search "must be the product of an essentially free and unrestrained choice by its maker."[1] Cole did not have the burden to present "affirmative evidence" that the drug dog statement was in fact *made*. The State had the burden to present evidence that such statement was *not* made. Moreover, the majority's assertion that "the State could simply argue that the statement was not made" is patently insufficient. It is a tenet of the law that a prosecutor's argument is not evidence, and, in this case, there was no factual basis upon which the prosecutor could argue that the drug dog statement was *not* made, since Officer Smith plainly testified that "It's possible, yes, sir" he made such statement. The majority's holding presents a new and interesting development in the law when the State is permitted to meet an affirmative constitutional burden by proving only that an officer "cannot recall" if he said or did something he should not have done and, further, testifies it is possible he did it.

---

[1] (Punctuation omitted.) *Walton v. State*, 194 Ga. App. 490, 492 (2) (390 SE2d 896) (1990).

Since the only evidence before the trial court — and before this Court — is that Officer Smith made drug dog statements in the past, and "[i]t's possible, yes, sir," he made such statement here, the prosecution cannot as a matter of fact or law (or common sense) meet its burden to show that "Officer Smith made no statement about getting a drug dog," as was concluded by the trial court and adopted by the majority. The finding that Officer Smith did not threaten Cole with a drug dog is clearly erroneous.[2]

2. Equally interesting for the future of *Terry* stop/detention cases is the majority's conclusion that "reasonable articulable suspicion" can be imputed to an officer who specifically testifies that "I have nothing to hold him on, he's free to go," but continues to detain the suspect in order to obtain a consent to search.[3] I believe this is the first time in Georgia an appellate court has found that an officer who did *not* have a reasonable articulable suspicion *should* have had it and has supplied it for him. The propriety of the majority's imputation is based on a reviewing court's ability to find "probable cause" where an officer is unsure whether such exists.[4]

In my view, however, "probable cause," is an objective determination — by an officer or otherwise — based on objective factors; while "reasonable articulable suspicion" is a *subjective* determination by an officer in the field based on objective circumstances on the scene. As such, if objective circumstances in the field do not create in an officer a reasonable suspicion of wrongdoing, we cannot give it to him after the fact.[5]

But pretermitting this and given that a majority of this Court wishes to be able to impute "reasonable articulable suspicion" to an officer who does not have it, I find this case an especially diverting vehicle for the majority's holding because of the strong, strong evidence that Officer Smith was absolutely correct when he determined

---

[2] *Sprauve v. State*, 229 Ga. App. 478, 479 (1) (494 SE2d 294) (1997).

[3] Compare *State v. Gibbons*, 248 Ga. App. 859, 863 (2) (547 SE2d 679) (2001) ("An officer who questions and detains a suspect for reasons other than those connected with the original purpose of the stop exceeds the scope of permissible investigation unless he has 'reasonable suspicion' of other criminal activity.").

[4] Indeed, the case relied upon by the majority, *United States v. Jones*, 990 F2d 405, 408 (8th Cir. 1993), premised its conclusion on the probable cause analysis contained in *Klingler v. United States*, 409 F2d 299, 304 (8th Cir. 1969), cert. denied, 396 U. S. 859 (90 SC 127, 24 LE2d 110) (1969). See also *United States v. McKie*, 951 F2d 399, 402 (D.C. Cir. 1991), also cited in *United States v. Jones*, supra, and holding that a court looks to the record as a whole to determine what facts were known to the officer who testified that *he had* reasonable articulable suspicion to detain.

[5] See *United States v. Knights*, 534 U. S. 112 (122 SC 587, 593, 151 LE2d 497) (2001) (Souter, J., concurring) ("I would therefore reserve the question whether [the] holding [in *Whren v. United States*, 517 U. S. 806, 813 (116 SC 1769, 135 LE2d 89) (1996)], that 'subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis' should extend to searches based only upon reasonable suspicion.") (citation omitted).

that the odor of marijuana present on the scene was insufficient to support a further detention of Cole:

> A: Upon making contact with the driver, Mr. Cole, I smelled a slight odor of marijuana come [sic] from the car. . . . It didn't have the fresh sort of like —.
> Q: It didn't smell like it was burning right then?
> A: No, sir, but it was like it was like the smoke was in the car, it had been smoked a lot in the car.
> Q: When he rolled down the window, like a big cloud of smoke didn't come billowing out?
> A: No, sir. . . . It's the smoke that's embedded into the vehicle, and it's kind of hard to tell if it's recently been smoked or it's old. . . .
> Q: Now, you stated that prior to you beginning this search, that this embedded smoke or whatever you want to call it was a — I believe you used the words a slight odor?
> A: From standing at the driver's side door with my head two to three feet above the car. . . .
> Q: [M]y question is, Mr. Cole may not have been smoking at all; some other people may have been smoking days earlier. Is that a possibility based on the slight odor?
> A: It is possible.
> Q: Am I correct in assuming since I didn't hear it on direct, that you did not smell any marijuana coming from his person, did you?
> A: It's not in the report. . . .
> Q: Well, that would be something you would put in your report had it happened. . . . You'd put it in the report?
> A: Yes, sir.

In addition, Officer Smith's investigation into whether Cole might be driving under the influence of drugs showed that, "Once he stepped out of the vehicle and talked to me, he was steady on his feet, and other than the bloodshot eyes, he seemed to be fairly okay."

In *State v. Folk*,[6] we determined that the odor of *burning* marijuana alone was sufficient to justify an officer's warrantless search of a vehicle. In *Patman v. State*,[7] we distinguished between the odor of burning marijuana which "suggests that marijuana is still present," and the smell of marijuana smoke which "merely suggests that marijuana was present in the past." Such distinction was predicated on the fact that the standard necessary for a detention is a reasonable

---

[6] 238 Ga. App. 206 (521 SE2d 194) (1999).
[7] 244 Ga. App. 833, 835 (537 SE2d 118) (2000).

articulable suspicion that a suspect "either *currently* or would soon be engaged in an unlawful activity."[8]

Here, Officer Smith, present on the scene, determined from the surrounding circumstances — including the marijuana smell — that he had "nothing further to hold Cole on." And the above evidence certainly supports this conclusion, since the odor of marijuana was only "slight"; did not appear to be fresh; and Cole, himself, neither smelled of marijuana nor acted as if he were under the influence.

However, on the basis of the evidence as noted above, we give the boot to Officer Smith's determination that Cole was free to go. The majority finds, instead, that the marijuana odor on the scene — an odor that this Court obviously did not experience — was of such consequence and immediacy that it *should have* created a "reasonable articulable suspicion" in Officer Smith that Cole was engaged in wrongdoing — even though it did not. Respectfully, I cannot give credence to this exercise of clairvoyant powers.

Because the facts in this case do not support a reasonable suspicion of current wrongdoing based on the odor of marijuana and plainly support Officer Smith's determination to the contrary, this Court cannot impute such reasonable suspicion to Officer Smith — even if it wanted to.

I am authorized to state that Judge Miller and Judge Phipps join in this dissent.

DECIDED MARCH 5, 2002 —
RECONSIDERATION DENIED MARCH 26, 2002 — ▮▮▮▮▮

*Steven A. Cook*, for appellant.
*Patrick H. Head, District Attorney, Henry R. Thompson, Dana J. Norman, Assistant District Attorneys*, for appellee.

---

[8] (Emphasis supplied.) *State v. Banks*, 223 Ga. App. 838, 840 (479 SE2d 168) (1996).