A02A1084. PALMER v. THE STATE.
(572 SE2d 27)

ELLINGTON, Judge.

A Cobb County Superior Court judge found Willie Lee Palmer guilty of trafficking in cocaine, OCGA § 16-13-31 (a) (1). Palmer appeals from the denial of his motion for new trial, contending the trial court erred in denying his motion to suppress evidence allegedly unlawfully seized. Palmer argues the police lacked reasonable articulable suspicion to stop him and that his consent to search was coerced. Finding no reversible error, we affirm.

On appeal from an order granting or denying a motion to suppress, the evidence must be construed most favorably to support the trial court's ruling. *State v. Causey*, 246 Ga. App. 829-830 (1) (540 SE2d 696) (2000). "Where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citation, punctuation and footnote omitted.) Id. at 830 (1). Further, a trial court's findings of fact with regard to a motion to suppress are accepted as correct on appeal unless clearly erroneous, except in cases "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented. . . ." *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

The record reveals these relevant facts. Around 11:00 p.m. on October 15, 1999, a sergeant with the Marietta-Cobb-Smyrna Narcotics Unit answered a phone call for a detective who had gone home for the night. The caller, who asked for a specific detective, would not leave his name with the sergeant. The sergeant thought he recognized the caller's voice; however, he did not know the caller's identity.

---

[2] See *Swanson*, supra; *Smith v. City of East Point*, 189 Ga. App. 454, 456 (3) (376 SE2d 215) (1988).

The caller told the sergeant he had information that a drug deal was about to occur at 271 Victory Drive in Marietta. He said a black male named Will was delivering crack cocaine to a white female named Donna Williams. Will was en route from a Delk Road motel and would be driving a dark-colored car. The sergeant did not know who Will was, but he knew Donna Williams from a previous narcotics investigation. The sergeant relayed this information through his dispatcher to uniformed officers with the City of Marietta Police Department.

A City of Marietta police officer received the details of the tip from his dispatcher and went to investigate. At 11:14 p.m., he drove by 271 Victory Drive and observed two people parked on the street in a black car. The officer drove by the car, turned around in a nearby parking lot, and, in the process, directed his headlights toward the car. The officer observed a black male and a white female sitting in the car. The car was parked too close to the intersection and was facing the wrong direction. The officer parked his patrol car behind the black car, got out and walked up to it, and asked the occupants for identification. The driver identified himself as Willie Palmer and the passenger as Donna Williams. During this conversation, the officer observed money partly tucked beneath Williams' leg. The officer believed she was trying to conceal it. Palmer told the officer he was staying at a motel on Franklin Road at Delk Road. A few minutes later, a second officer arrived. He also observed the money beneath Williams' leg.

The second officer told Palmer that the police had received information that he possessed drugs. The officer asked Palmer if he would step out of the car, and Palmer consented. The officer also asked for and received permission to pat down Palmer's person for weapons. The officer asked for consent to search Palmer's car. Palmer asked the officer what would happen if he refused, and the officer responded that he would probably either get a search warrant or call for a drug dog. Palmer consented to the search of his car. A search of the car revealed 47.1 grams of cocaine in Palmer's glove compartment. Palmer also had $750 in cash on his person.

The record indicates that four officers eventually responded to the scene. However, two of those officers were primarily observers — an officer trainee and a backup officer. None of the officers used their blue lights. The record indicates that all of the officers parked behind Palmer. There is no evidence that any officer drew a weapon, issued commands, or used or displayed force during the encounter.

1. In his first enumeration of error, Palmer contends the court should have granted his motion to suppress because the anonymous tip lacked "sufficient indicia of reliability" to justify "an investigatory stop of the Appellant's vehicle." The record plainly reveals, however,

that the police did not "stop" Palmer's vehicle. Palmer was already voluntarily stopped, parked on the side of the road. It is well established that an officer is not required to have articulable suspicion before he can approach a person in a stopped vehicle and talk with him or her. *State v. Ledford*, 247 Ga. App. 412, 413-414 (1) (a) (543 SE2d 107) (2000); *Molaro v. State*, 236 Ga. App. 35, 37 (1) (510 SE2d 886) (1999); *Crosby v. State*, 214 Ga. App. 753, 754 (449 SE2d 147) (1994). "Communications between police and citizens involving no coercion or detention are outside the domain of the Fourth Amendment, and no seizure requiring reasonable suspicion of unlawful activity occurs simply because a police officer approaches an individual and asks a few questions." (Citations and punctuation omitted.) *Crosby v. State*, 214 Ga. App. at 754-755. In such circumstances, even when officers have no basis for suspecting a person, they may ask questions, request identification, and request consent to search — "as long as the police do not convey a message that compliance with their requests is required." (Punctuation omitted.) Id. at 755. A seizure requiring reasonable articulable suspicion occurs only when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (Punctuation omitted.) *Verhoeff v. State*, 184 Ga. App. 501, 503 (2) (362 SE2d 85) (1987), citing *United States v. Mendenhall*, 446 U. S. 544, 554 (100 SC 1870, 64 LE2d 497) (1980).

In this case, Palmer was already voluntarily stopped, sitting in a parked vehicle on a public street. The investigating officer parked behind Palmer. He did nothing to prevent Palmer from driving away. The officer did not turn on his blue lights or give any commands. He did not draw his weapon. He simply approached Palmer and asked to see identification, which Palmer and his passenger produced without complaint or protest. Considering these facts, the police were not required to have reasonable articulable suspicion prior to approaching Palmer because they did not seize Palmer within the meaning of the Fourth Amendment. *Ledford*, 247 Ga. App. at 413-414 (1) (a); *Crosby*, 214 Ga. App. at 755; *Verhoeff*, 184 Ga. App. at 503-504 (2). Therefore, for purposes of this enumeration of error, whether the anonymous tip had sufficient indicia of reliability is irrelevant. We find no error.

2. In his second enumeration of error, Palmer contends the trial court should have granted his motion to suppress because his consent to the search of his car was coerced. Palmer argues that when he asked the officer what would happen if he refused to consent, the officer improperly led him to believe that he would ultimately search

the car anyway, either by obtaining a warrant or with the assistance of a drug dog. The entire record on this point is as follows:

> COUNSEL: And do you recall him saying what's going to happen if I don't [consent to the search]?
> OFFICER: Yes.
> COUNSEL: And you told him that you probably would either get a search warrant or you would call a K-9?
> OFFICER: That's correct.
> COUNSEL: Okay. And at that point, after you told him that, he said okay, go ahead and search?
> OFFICER: Correct.

A consent which is the product of coercion or deceit on the part of the police is invalid. *Bumper v. North Carolina*, 391 U. S. 543 (88 SC 1788, 20 LE2d 797) (1968). "[W]hen an officer represents to an accused that he has authority to search, when actually he does not, a resultant consent by the accused to the search is invalid. In these circumstances, the consent is merely a submission to an apparent legitimate display of legal authority to which all are required to submit." *Code v. State*, 234 Ga. 90, 95 (III) (214 SE2d 873) (1975). Accord *Darby v. State*, 216 Ga. App. 781, 783 (2) (455 SE2d 850) (1995). "We must look to the conduct of the officers . . . to ascertain whether there was coercion [or deceit] in obtaining the consent to search." *Code v. State*, 234 Ga. at 94-95 (III). Whether the consent was coerced is a question of fact to be determined based upon the totality of circumstances. Id.; *State v. Hall*, 229 Ga. App. 194, 195 (493 SE2d 718) (1997).

In this case, the record does not support a finding that the police, in an effort to get consent to search, told the defendant that a search warrant either had been obtained or was forthcoming. There was no "apparent legitimate display of authority" made in conjunction with the request to search. Rather the officer responded to the defendant's question, stating that he would *probably either* get a warrant or call for a drug dog. Based on what the officer reportedly said, we cannot conclude that the officer implied that either event would necessarily occur and that he would ultimately search anyway, even if Palmer refused to consent. The trial court, taking into account the officer's credibility and the circumstances of the case, was authorized to find that the officer was simply explaining the courses of action he *might* pursue next, and not that the outcome of either action was predetermined.[1] Consequently, it follows that the officer's statement was not,

---

[1] Although the State bears the burden of proving that the consent to search was voluntary, it does not have to produce evidence affirmatively explaining what the officer meant by

as a matter of law, deceptive or coercive because the officer was not representing that he already had lawful authority to search the car and would do so even if consent was refused. See *Darby v. State*, 216 Ga. App. at 783 ("When an officer represents to an accused that a warrant to search *will be obtained if consent is refused,* and does not have probable cause to secure the warrant, then the accused's consent is invalid.") (emphasis supplied); *State v. Kilby*, 130 Idaho 747, 750 (II) (B) (947 P2d 420) (App. 1997) (consent was not invalid where the officer told the defendant that if he refused to consent, the officer would have to obtain a search warrant).

Moreover, under the facts of this case, the officer would have been authorized to briefly detain Palmer while a drug dog was called to sniff the exterior of his car for the odor of illegal drugs. Given the detailed, corroborated anonymous tip coupled with Williams' attempt to hide the cash, the officer had the requisite reasonable, articulable suspicion of drug activity to detain Palmer while he made further investigation — which would legitimately include the use of a drug dog. See *Britton v. State*, 220 Ga. App. 120 (469 SE2d 272) (1996) (corroborated anonymous tip was sufficiently reliable to provide reasonable suspicion for investigatory stop); *Cole v. State*, 254 Ga. App. 424, 425-426 (562 SE2d 720) (2002) (during an investigatory stop an officer may use a drug dog within the scope of that investigation); *State of Ga. v. Montford*, 217 Ga. App. 339, 340-341 (1) (457 SE2d 229) (1995) (motorist's nervousness, appearance, and possession of a large amount of cash justified a brief detention while a drug dog sniffed the car's exterior). And, if during the course of such an investigation, the dog alerted to the presence of contraband inside the car, the police would have had probable cause to search the car. See *Roundtree v. State*, 213 Ga. App. 793, 794-795 (446 SE2d 204) (1994) (drug dog's alert established probable cause). Because the police could have eventually lawfully searched the car without Palmer's consent based upon one of the courses of action mentioned to Palmer, we cannot say that Palmer's consent was the product of deceit or a display of authority that the officer lacked. See *Code v. State*, 234 Ga. at 93, 95 (III). For these reasons, Palmer's second enumeration of error is without merit. The trial court did not err in denying Palmer's motion to suppress.

*Judgment affirmed. Smith, P. J., and Eldridge, J., concur.*

---

the statements adduced. See *Cole v. State*, 254 Ga. App. 424, 425 (2) (562 SE2d 720) (2002). Rather, the State may address that issue in argument. Id. And, the court's findings with respect to disputed facts and to the credibility of witnesses are adopted unless clearly erroneous. Id.

DECIDED SEPTEMBER 30, 2002.

*Berry & Reynolds, Jimmy D. Berry, D. Victor Reynolds*, for appellant.

*Patrick H. Head, District Attorney, Rose L. Wing, Amelia G. Pray, Assistant District Attorneys*, for appellee.