## A03A1124. PRUITT v. THE STATE.
### (589 SE2d 591)

MIKELL, Judge.

After a bench trial, Jamison Dwain Pruitt was convicted of possession of less than one ounce of marijuana and fined $300. On appeal, he assigns error to the trial court's denial of his motion to suppress. We reverse the trial court's order in part and remand for the court to determine whether probable cause existed for the search of Pruitt's car.

Three principles guide our review of the trial court's findings of fact.

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the

---

evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

The evidence adduced at the hearing on the motion to suppress shows that on March 19, 2002, Pruitt's mother called the police, reported her 19-year-old son missing, and stated that he had drugs in his car. A description of the car was given over the radio. At approximately 6:00 p.m. Clayton County Police Officer John Ivey spotted the vehicle at a BP station. Ivey approached Pruitt while he was standing near a pay telephone. Pruitt was accompanied by two other males. Pruitt's mother was nearby, and she asked Ivey to search her son's car. Ivey explained that he could not do so unless Pruitt consented. Pruitt refused.

Meanwhile, Mrs. Pruitt summoned her husband, Lieutenant Michael Dwain Pruitt, who is the commander of the Fayette County Sheriff's Department's Narcotics Unit. According to Ivey, after he told Lieutenant Pruitt that his son had refused to consent to a search of his vehicle, Lieutenant Pruitt said that he smelled marijuana, and he reached under the driver's seat and found a small amount of the drug. Ivey testified that he smelled "something," but was not "a hundred percent [sure] what it was." Finally, Ivey testified that Pruitt never said that he wanted to leave and that he did not block Pruitt's exit. On cross-examination, Ivey was asked, "Isn't it true that you had Mr. Pruitt detained in the back of your vehicle before his father arrived?" Ivey replied, "No, I don't recall that."

Officer James E. Hagen, Jr., testified that when he arrived at the scene to provide backup, Ivey stated that he thought he smelled marijuana. According to Hagen, Ivey asked Pruitt for his consent to search the vehicle. He refused. However, Pruitt and his companions allowed the officers to search their persons. No drugs were found. At that time Lieutenant Pruitt arrived.

According to Hagen, Lieutenant Pruitt walked over to the car, put his head next to the driver's side window, and said that he smelled marijuana. Lieutenant Pruitt then argued with his son for refusing consent, opened the driver's side door, and discovered marijuana underneath the driver's seat. Hagen was then asked, "Now

---

[1] (Citation omitted.) *Stokes v. State*, 238 Ga. App. 230 (518 SE2d 447) (1999).

when you pulled in did you see the defendant in the back of Officer Ivey's patrol car?" Hagen replied, "I know at one point he was in the back of a patrol car. I can't remember if it was right as I pulled up or not." On cross-examination, Hagen testified that the three men had been detained and were not free to leave.

Lieutenant Pruitt testified that he arrived on the scene approximately 20 minutes after his wife called him. He explained to the officers that his son had a drug problem and that Lieutenant Pruitt and his wife were concerned that Pruitt might harm himself or others by driving his vehicle. The officers told Lieutenant Pruitt that they could not detain his son. Lieutenant Pruitt further testified,

> I asked [the officer] if he saw any marijuana or smelled any marijuana, and he said he didn't. I told him, I said, well, I know he's got marijuana in the car because he's doing it all the time from what I've been told. So I walked over to the car. I hollered over at Jamie and told him, I said you've been smoking in this car again, I'm fixing to search it. And I went in the car.

Lieutenant Pruitt further testified that he was wearing his badge, which was visible to his son. On cross-examination, Lieutenant Pruitt testified that he was not on official business when he searched his son's car but was acting as a father.

1. Pruitt argues that the trial court should have granted his motion to suppress because the officers unlawfully detained him. We disagree.

There are three levels of police-citizen encounters: (1) police-citizen communication involving no coercion or detention and therefore outside the ambit of the Fourth Amendment; (2) brief investigatory stops that must be supported by reasonable suspicion; and (3) arrests, which must be supported by probable cause.[2]

> In the first tier, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized

---

[2] *Small v. State*, 243 Ga. App. 678, 679 (1) (534 SE2d 139) (2000).

and objective basis for suspecting the persons are involved in criminal activity.[3]

In addition, "[t]he actions of an officer approaching a stopped vehicle, requesting to see a driver's license, and inquiring about possible criminal or suspicious activity clearly fall within the realm of the first type of police-citizen encounter and do not amount to a stop."[4] In *Palmer v. State*,[5] we held that even without a basis for suspecting a person, the police may ask questions, request identification, and request consent to search, so long as they do not convey the message that compliance is required.[6] Whether an incident qualifies as a first-tier encounter is a mixed question of fact and law, and we will sustain the trial court's findings of fact if there is any evidence to support them.[7]

In the case sub judice, the trial court did not err in concluding that the encounter between the police and Pruitt was a first-tier encounter. As noted above, Ivey did not stop Pruitt's vehicle. Ivey approached Pruitt while he was standing near a pay telephone and requested his driver's license and proof of insurance. Pruitt supplied those items, and they were returned to him. Ivey smelled an odor, but was not certain whether it was marijuana, and he sought consent to search Pruitt's vehicle. Consent was denied. Mrs. Pruitt had already called her husband, who arrived within 20 minutes. The Clayton County officers informed Pruitt's parents that the police could neither detain Pruitt nor search his vehicle without his consent. Finally, the evidence as to whether Pruitt was put in the back of Ivey's patrol car was in conflict. As the trier of fact, the trial judge was authorized to resolve the conflict in favor of the state. In addition, the court was free to disregard Hagen's statements on cross-examination concerning whether Pruitt had been detained. "[D]etermining the credibility of witnesses and the weight to be given their testimony is a power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony."[8] As the trial court's determination that no detention occurred is supported by some evidence, this portion of the judgment is affirmed.

---

[3] (Citation omitted.) *Peters v. State*, 242 Ga. App. 816, 817 (1) (531 SE2d 386) (2000).

[4] (Citations and footnotes omitted.) *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997); *Carrera v. State*, 261 Ga. App. 832, 834 (584 SE2d 2) (2003).

[5] 257 Ga. App. 650, 652 (1) (572 SE2d 27) (2002).

[6] Id. at 652 (1).

[7] *Carrera*, supra at 834.

[8] (Citation and punctuation omitted.) *State v. Gibbons*, 248 Ga. App. 859, 860 (1) (547 SE2d 679) (2001).

2. Pruitt next argues that the trial court erred in ruling that the search conducted by Lieutenant Pruitt did not constitute state action and was not subject to Fourth Amendment protections. This argument has merit.

> The protection afforded by the Fourth Amendment proscribes only governmental action and is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation of a government official. The test is whether the private individual, in light of all the circumstances of the case, must be regarded as having acted as an "instrument" or agent of the government when he produced the evidence.[9]

In concluding that no state action was involved, the trial court relied on *Cook v. State*.[10] In that case, our Supreme Court ruled that a statement made by the defendant to his Federal Bureau of Investigation agent/father did not require suppression. The defendant, a suspect in a double murder, invoked his right to counsel and asked to speak with his father. The father testified that he was "not intent on gathering evidence for the state; instead, he wanted 'to try to persuade [his son] to cooperate in hopes of getting a reduced sentence.' "[11] When father and son were allowed to speak privately, they were crying and shaking, and the father hugged his son.[12] The Court noted that

> [i]t is perfectly natural and reasonable for a parent, law enforcement or civilian, to speak to his or her arrested child about an alleged crime and give advice that may include cooperating with the police and confessing. However, we can envision situations where a law enforcement parent might subject his or her arrested child to a custodial interrogation within the meaning of *Miranda*. Therefore, we conclude that this issue must be resolved on a case-by-case basis, by viewing the totality of the circumstances, in order to determine if the law enforcement parent was acting as a parent or as an

---

[9] (Citations and punctuation omitted.) *State v. Lovig*, 189 Ga. App. 436-437 (376 SE2d 229) (1988). Accord *Britt v. State*, 186 Ga. App. 418, 420 (3) (367 SE2d 298) (1988) (physical precedent only); *State v. Betsill*, 144 Ga. App. 267 (240 SE2d 781) (1977); *State v. Young*, 234 Ga. 488, 489 (1) (216 SE2d 586) ("absent some state action in a search context there can be no Fourth Amendment violation"), cert. denied, *Young v. Georgia*, 423 U. S. 1039 (96 SC 576, 46 LE2d 413) (1975).

[10] 270 Ga. 820, 823 (2) (514 SE2d 657) (1999).

[11] Id. at 824 (2).

[12] Id. at 824-825 (2).

agent of the state when speaking with his or her arrested child.[13]

The circumstances in *Cook* differ substantially from those in the case sub judice. In *Cook*, the FBI agent-father subordinated his employer-employee relationship to his parent-child relationship. The same cannot be said in this case. Pruitt did not summon his father, and their exchange at the scene was hostile. There was no cooperation between parent and child. Rather, Lieutenant Pruitt announced his intention to search Pruitt's vehicle, found the drugs, and promptly turned them over to the officers on the scene. His actions during the incident, and the manner in which the evidence was gathered, were more consistent with those of the commander of a narcotics unit than with those of a parent trying to assist his child. Under the totality of the circumstances, we conclude that the trial court clearly erred in determining that Lieutenant Pruitt was not a state actor.[14]

This does not end our inquiry, however. The state argues that, even if this Court were to find that Lieutenant Pruitt acted as a law enforcement officer, the search was supported by probable cause. In this regard, the state points to the testimony of Ivey and Hagen that Lieutenant Pruitt stated that he detected an odor of marijuana coming from Pruitt's vehicle. "[A] trained police officer's perception of the odor of burning marijuana, provided his ability to identify that odor is placed into evidence, constitutes sufficient probable cause to support the warrantless search of a vehicle."[15] Pruitt argues that the state abandoned this issue. We do not agree. Pruitt argued in his motion to suppress that Lieutenant Pruitt lacked probable cause to conduct the search, and the state argued at the hearing that Ivey's testimony that he thought he smelled marijuana coming from the car justified the search. The trial court found that Ivey was not certain that he smelled marijuana emanating from the vehicle but did not address whether Lieutenant Pruitt detected the odor of marijuana. As "this [C]ourt is limited to resolving questions of law rather than fact," we reverse the trial court's order denying Pruitt's motion to suppress and remand this case with the direction that the trial court determine whether Lieutenant Pruitt had probable cause to search the vehicle.[16]

---

[13] Id. at 827 (2).

[14] *State v. Underwood*, 257 Ga. App. 893, 895 (572 SE2d 394) (2002) (great deference is given to trial courts' rulings on motions to suppress unless they are clearly erroneous).

[15] *State v. Folk*, 238 Ga. App. 206, 209 (521 SE2d 194) (1999).

[16] (Punctuation and footnote omitted.) *State v. Baker*, 261 Ga. App. 258, 260 (582 SE2d 133) (2003).

*Judgment affirmed in part and reversed in part and case remanded with direction. Johnson, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 28, 2003.

*Sexton & Morris, Ricky W. Morris, Jr., Joseph S. Key*, for appellant.

*Keith C. Martin, Solicitor-General, Evelyn Proctor, Assistant Solicitor-General*, for appellee.