MIKELL, Judge.
 

 Reginald Boykins was indicted for possession of cocaine after the contraband was found in the center console of his vehicle during a search conducted incident to his arrest for a probation violation. Boykins filed a motion to suppress. At the hearing held on the motion, he contended that the police conducted a Terry
 
 [1]
 
 stop of his vehicle without a reasonable, articulable suspicion of criminal activity and that the search was invalid under
 
 Arizona v. Gant,
 

 [2]
 

 in which the United States Supreme Court significantly curtailed the authority of the police to conduct a warrantless search of a vehicle incident to a recent occupant’s lawful arrest.
 
 [3]
 
 Based on the arresting officer’s testimony, the trial court denied the motion on two grounds. First,
 
 *405
 
 the court found that the contact between the officer and Boykins was a “first-tier” encounter, which did not require articulable suspicion. Second, the trial court ruled that the search was valid under
 
 Gant
 
 because Boykins was standing next to his car when it was searched. Boykins was then convicted at a bench trial. On appeal, he challenges the denial of his motion to suppress. Because there is evidentiary support for the trial court’s findings, we affirm the trial court’s judgment.
 

 At a hearing on a motion to suppress, the trial judge sits as the trier of fact. And Georgia law has long held that the trier of fact may believe or disbelieve all or any part of the testimony of any witness. Thus, on appellate review of a trial court’s order on a motion to suppress evidence, we never second-guess the trial court’s factual findings where they are based on testimonial evidence. We construe the evidence most favorably to the upholding of the trial court’s findings and judgment and affirm unless the court has committed an error of law.
 
 [4]
 

 Properly viewed, the evidence adduced at the suppression hearing shows that on January 3, 2009, DeKalb County Police Officer Michael Morales was patrolling a high crime area when he observed a man in a stopped vehicle talking to a woman who was walking near the entrance of the Wyntree Apartments on Plaster Road. Suspecting prostitution, Morales turned around, and he saw the vehicle leave rapidly. Morales made contact with the woman and inquired whether she knew the man in the vehicle. She stated that she did not and explained that he had offered her a ride. Morales entered the complex to look for the vehicle, which he found backing into a parking space in front of apartment number 58. Morales did not turn on his blue lights but pulled his police car in front of the vehicle, blocking it in.
 

 Once the vehicle was parked, Morales approached the driver, later identified as Boykins, to ask for identification. Boykins, who was still inside his vehicle, stated that his identification was in his apartment. Morales then determined that Boykins had an outstanding probation warrant and arrested him. Morales testified that he handcuffed Boykins, then placed him in the custody of a second officer on the scene. Morales searched Boykins’s person and the
 
 *406
 
 “wing span within his vehicle,” finding cocaine in the center console. Morales testified that at the time of the search, Boykins was standing outside of his vehicle. When Morales produced the narcotics, Boykins said, “Ah, man, you got me.” He also told Morales that there was no need to field test the substance; it was crack cocaine.
 

 Morales testified that his purpose in searching the vehicle was to ensure that no weapons were left in it because the officers were going to impound it. Morales also testified, however, that the vehicle was not impounded. The officers knocked on the door of apartment number 58, and when Boykins’s wife answered the door, they released the vehicle to her.
 

 1. Boykins first argues that the trial court erred in determining that the initial contact with police was a first-tier encounter. Specifically, Boykins contends that when the officer blocked his vehicle with the police car, the encounter escalated into a second-tier
 
 Terry
 
 stop. He further contends that the officer lacked any reasonable, articu-lable suspicion justifying the stop, so that the trial court erred in denying his motion to suppress.
 

 “At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief ‘stops’ or ‘seizures’ that require reasonable suspicion; and ‘arrests,’ which can only be supported by probable cause.”
 
 [5]
 

 In the first tier, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative
 
 Terry
 
 stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.
 
 [6]
 

 Whether police-citizen contact qualifies as a first-tier encounter is a mixed question of fact and law, and we will uphold the trial court’s findings of fact if there is any evidence to support them.
 
 [7]
 
 Here, the evidence supported the trial court’s finding that Morales stopped in front of a parked car and asked the occupant for identification. It is well established that “[t]he actions of an officer approaching a
 
 *407
 
 stopped vehicle, requesting to see a driver’s license, and inquiring about possible criminal or suspicious activity clearly fall within the realm of the first type of police-citizen encounter and do not amount to a stop.”
 
 [8]
 
 Contrary to Boykins’s argument, the fact that Morales parked the police car in front of his vehicle did not, as a matter of law, create the impression that he could not leave. The evidence shows that when Morales approached Boykins, he had driven into his apartment complex and was parked in front of his own apartment. We infer from this evidence that he intended to walk inside, not drive away, so the trial court was authorized to find that the manner in which the officer parked his car is not dispositive under the circumstances.
 
 [9]
 
 Morales did not have his blue lights on and did not restrain Boykins until probable cause existed for his arrest, i.e., upon learning that he had no identification and had an outstanding warrant. The trial court did not err in denying the motion to suppress on this basis.
 

 2. Boykins contends that the trial court erred in finding that the search of the passenger compartment of his vehicle was valid under
 
 Gant
 
 as a search incident to a lawful arrest.
 
 [10]
 
 Again, we disagree.
 

 The search incident to arrest exception to the warrant requirement was established in
 
 Chimel v.
 
 California.
 
 [11]
 
 Under
 
 Chimel,
 
 police officers are authorized, pursuant to a lawful custodial arrest, to search the arrestee and the area “within his immediate control” in order to remove weapons the arrestee might grab or evidentiary items he might conceal or destroy.
 
 [12]
 

 Chimel
 
 involved a search of a residence,
 
 [13]
 
 and courts began having difficulty applying the exception to the automobile context. Thus, in
 
 New York v. Belton,
 

 [14]
 

 *
 
 the Court sought to establish a workable rule in that context. The Court
 
 *408
 
 held that when police officers “ha[ve] made a lawful custodial arrest of the occupant of an automobile, [they] may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile[ and] the contents of any containers found” therein.
 
 [15]
 
 In Georgia, we interpreted
 
 Belton
 
 as granting police officers broad authority to search automobiles pursuant to the incident-to-arrest exception, with the authority extending to the entire passenger compartment of the vehicle and any closed containers therein.
 
 [16]
 

 In
 
 Gant,
 

 [17]
 

 the Supreme Court rejected a broad interpretation of
 
 Belton
 
 and held that “the
 
 Chimel
 
 rationale authorizes police to search a vehicle incident to a recent occupant’s arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.”
 
 [18]
 
 The Court added that, although it does not follow from
 
 Chimel,
 
 a search incident to a lawful arrest is also justified “when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.”
 
 [19]
 
 The Court thus reaffirmed that a search incident to arrest is limited by its two justifications —: officer safety and evidence preservation. “If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.”
 
 [20]
 
 The Court determined that the practice of conducting the search incident to a lawful arrest after the car’s occupant had been handcuffed and placed in the back of a patrol car exceeded the boundaries prescribed by
 
 Chimel.
 

 [21]
 

 The Court concluded:
 

 Police may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee’s vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.
 
 [22]
 

 
 *409
 
 Decided October 28, 2010
 

 Reconsideration denied December 15, 2010
 

 Lynn M. Kleinrock,
 
 for appellant.
 

 Noticeably absent from this conclusion is the requirement that the arrestee also be unsecured. The Court seemingly addressed this issue in a footnote: “Because officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee’s vehicle remains. . . .
 
 But in such a case a search incident to arrest is reasonable under the Fourth Amendment”
 

 [23]
 

 We interpret
 
 Gant
 
 to mean that the police may conduct a search of the passenger compartment of the arrestee’s vehicle incident to his lawful arrest in the “rare case” in which the arrestee still has a “real possibility of access” to his vehicle. Applying this interpretation to the case at bar, we conclude that the trial court did not err in finding the search of the passenger compartment of Boykins’s vehicle permissible under
 
 Gant.
 
 The arresting officer testified that, at the time of the search, Boykins was standing outside of his automobile. The trial court apparently inferred from the officer’s testimony that Boykins was within arm’s reach of the passenger compartment. The officer also testified that Boykins was handcuffed and standing with a second officer in that officer’s custody at the time of the search. Boykins argues that those facts compel the conclusion that he had no “real possibility of access” to his vehicle. But unlike the defendant in
 
 Gant,
 
 Boykins had not been placed in the back of the patrol car at the time of the search; he was standing outside of his vehicle. In the final analysis, we hold that whether he had any “real possibility of access” to the passenger compartment of his vehicle was a mixed question of fact and law for the trial court to determine. We will not second-guess the trial court’s finding that the search was justified under
 
 Gant
 
 and
 
 Chimel
 
 on the basis of officer safety.
 

 Judgment affirmed.
 

 Smith, P. J., concurs. Adams, J., concurs in judgment only.
 

 
 *410
 

 Gwendolyn Keyes Fleming, District Attorney, William T Kemp III, Daniel J. Quinn, Assistant District Attorneys,
 
 for appellee.
 

 
 *403
 
 This section of the Code, if construed alone, would appear to authorize the contentions of counsel, but our system of law is not to be construed by single Code sections or single provisions of the law; the entire system must be construed as a whole to determine the intent and purpose of the law as applied to each particular case or state of facts.
 

 Lucas v. Smith,
 
 201 Ga. 834, 837 (41 SE2d 527) (1947). In other words, “[a] statute must be construed to give sensible and intelligent effect to all of its provisions and to refrain from any interpretation which renders any part of the statute meaningless.” (Citations and punctuation omitted.)
 
 Expedia, Inc. v. City of Columbus,
 
 285 Ga. 684, 689 (4) (681 SE2d 122) (2009).
 

 Thus, OCGA § 9-9-6 (b) and (d) must be construed together, considering that (b) refers to (d), and (d) states that the right to apply for a stay may be waived “as provided in this Code section.” It would be illogical to construe the statute to allow a party to fully participate in the arbitration process but still retain the absolute right to seek a stay any time the other party amends its statement of facts. If the party initiating the arbitration amends its claim to add an entirely new and different issue, then the respondent would have the right under OCGA § 9-9-6 (d) to seek a stay within 30 days regardless of whether it participated in arbitrating the original issues. But construing the statute as a whole, a party who has participated in the arbitration process has no right to apply for a stay simply because the initiator amends its statement of facts. This construction harmonizes subsection (b)’s provision allowing a party who has not participated in arbitration to apply for a stay with subsection (d)’s provision that the respondent’s right to seek a stay may not be waived except as otherwise provided in the Code section.
 

 VCC’s demands for arbitration put Atlantic Station on notice that its claims arose out of an understanding between the parties and not from the written contracts. While Atlantic Station asserts that it did not know the basis for VCC’s arbitration demand until VCC’s second amended demand 18 months after its initial demand, VCC claimed in its very first arbitration demand that the parties had proceeded to collaborate under “mutual understandings” which
 
 *404
 
 modified the terms of the written contracts. Atlantic Station actively participated in the arbitration from January 2008 to July 2009, and then, once the facts were developed, challenged the demand and initiated a new action by filing a motion to stay the arbitration. By participating for 18 months in the arbitration process regarding Vratsinas’ $4.6 million claim for services rendered, Atlantic Station waived its right to seek a stay after Vratsinas amended its supporting facts.
 

 The trial court did not err in denying Atlantic Station’s motion to stay the arbitration.
 

 Based on the foregoing, Atlantic Station’s enumerations of error are moot.
 

 Judgment affirmed.
 

 [1]
 

 Terry v.
 
 Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).
 

 [2]
 

 556 U. S. 332 (129 SC 1710, 173 LE2d 485) (2009).
 

 [3]
 

 Id., 129 SC at 1723-1724 (VI). The search under consideration took place on January 3,
 
 *405
 
 2009.
 
 Gant
 
 was decided on April 21, 2009.
 

 [4]
 

 (Punctuation and footnotes omitted.)
 
 State v. Rowell,
 
 299 Ga. App. 238-239 (682 SE2d 343) (2009).
 

 [5]
 

 (Citation omitted.)
 
 Brittian v. State,
 
 257 Ga. App. 729, 731 (572 SE2d 76) (2002).
 

 [6]
 

 (Footnote omitted.)
 
 Pruitt v. State,
 
 263 Ga. App. 814, 816-817 (1) (589 SE2d 591) (2003).
 

 [7]
 

 Id. at 817 (1); accord
 
 Carrera v. State,
 
 261 Ga. App. 832, 834 (584 SE2d 2) (2003).
 

 [8]
 

 (Citations and footnote omitted.)
 
 McClain v. State,
 
 226 Ga. App. 714, 716-717 (1) (487 SE2d 471) (1997) (officer pulled up alongside defendant in parking lot). Accord
 
 Carrera,
 
 supra (police approaching parked car is first-tier encounter);
 
 Mijares v. State,
 
 252 Ga. App. 804, 805 (2) (556 SE2d 927) (2001) (first-tier encounter where officer did not create impression that defendant could not leave, after officer approached defendant standing outside his parked car).
 

 [9]
 

 Cf.
 
 State v. Kaylor,
 
 234 Ga. App. 495, 496-498 (507 SE2d 233) (1998) (officer parked his car behind defendant’s van in parking lot of a convenience store but did not block van’s means of egress; officer approached defendant and requested license and proof of insurance; stop was a first-tier encounter).
 

 [10]
 

 The trial court also found that the search was justified as an inventory search because the officer testified that he planned to impound the vehicle. The state concedes that this finding is erroneous because the car was legally parked outside of Boykins’s apartment at the time of the search and was released to his wife.
 

 [11]
 

 395 U. S. 752 (89 SC 2034, 23 LE2d 685) (1969).
 

 [12]
 

 Id. at 762-763. Accord
 
 Banks v. State,
 
 246 Ga. 178, 180 (2) (269 SE2d 450) (1980) (“it is reasonable for an officer to search an area surrounding the arrest area into which a suspect might reach to obtain a weapon”) (citations omitted).
 

 [13]
 

 Chimel,
 
 supra at 753.
 

 [14]
 

 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981).
 

 [15]
 

 (Citations and footnotes omitted.) Id. at 460 (II).
 

 [16]
 

 Hurley v. State,
 
 287 Ga. App. 482, 483 (651 SE2d 748) (2007);
 
 Vega v. State,
 
 236 Ga. App. 319, 320 (512 SE2d 65) (1999);
 
 State v. Hopkins,
 
 163 Ga. App. 141, 144 (293 SE2d 529) (1982) (whole court).
 

 [17]
 

 Supra.
 

 [18]
 

 (Footnote omitted.) Id., 129 SC at 1719 (III).
 

 [19]
 

 (Citation and punctuation omitted.) Id. See
 
 Humphreys v. State,
 
 287 Ga. 63, 76 (7) (694 SE2d 316) (2010).
 

 [20]
 

 (Citation omitted.)
 
 Gant,
 
 supra, 129 SC at 1716 (II).
 

 [21]
 

 Id., 129 SC at 1718 (III).
 

 [22]
 

 Id. at 1723-1724 (VI).
 

 [23]
 

 (Citation omitted; emphasis supplied.) Id. at 1719 (III), n. 4.