A03A0612. THE STATE v. FLORES et al.
(585 SE2d 714)

ANDREWS, Presiding Judge.

Jorge Flores and Jose Renteria were jointly indicted along with others for the offenses of possessing methamphetamine, possessing methamphetamine with intent to distribute, and possessing tools used in violating the Georgia Controlled Substances Act. Flores and Renteria filed separate motions to suppress evidence of methamphetamine found when DeKalb County narcotics officers stopped and searched the vehicle Renteria was driving. Finding the initial stop was unreasonable, the trial court granted both motions, and the State appeals.

We find that the facts collected by the officers during the ongoing investigation they were conducting at the time of the stop gave them a sufficient factual basis to stop Renteria in the vehicle he was driving to investigate the reasonable suspicion that Renteria was in possession of methamphetamine. The trial court erred by finding that the stop was unreasonable and erred by granting the separate motions filed by Renteria and Flores seeking suppression of the methamphetamine found in the search of the vehicle. Accordingly, we reverse.

On July 13, 2001, Renteria and Flores driving separate vehicles had just departed from apartment H-17 of the North Highland Apartments in DeKalb County. At that point, DeKalb narcotics officers had been conducting surveillance on the apartment for about three months. With Flores following Renteria, both vehicles were stopped by narcotics officers about a half-mile from the apartment.

---

[7] See *Sysco*, supra at 461-463.
[8] See *Workman*, supra at 785-786.

The stops were made solely on the basis of the officers' belief that the facts they had gathered in the investigation were sufficient to justify the stop to investigate their suspicion that Renteria and Flores were transporting methamphetamine from the apartment. Renteria concedes that, during the investigatory stop, a police drug dog alerted to the scent of contraband when taken around the exterior and interior of his vehicle, revealing the presence of methamphetamine in the vehicle. The drug dog also sniffed the vehicle driven by Flores, but no drugs were found in that vehicle.

Renteria and Flores filed separate motions to suppress the methamphetamine found in Renteria's vehicle. Renteria's motion alleged that the officers illegally stopped him without a sufficient basis to suspect he was engaged in criminal activity and that the subsequent search of the vehicle was without probable cause. Flores's motion also alleged that the vehicle driven by Renteria was illegally stopped and searched. After a hearing on the motions, the trial court found that both defendants had standing to seek suppression of the methamphetamine. Without making any findings of fact in its written order or on the record at the suppression hearing, the trial court ruled: "The stops of Flores and Renteria on July 13, 2001 were without articulable suspicion that either defendant was engaged in criminal activity; the stops were not constitutionally reasonable." Since the stop provided the means for gathering the drug dog evidence that was used to justify the search, the trial court granted the motions filed by Renteria and Flores to suppress the methamphetamine found in the subsequent search of Renteria's vehicle.[1]

The issue presented is whether the trial court erred by finding that the stop of Renteria's vehicle was illegal because the officers lacked a sufficient basis to reasonably suspect criminal activity. The officers were authorized under the Fourth Amendment to conduct an investigatory stop of Renteria's vehicle if based on the "totality of the circumstances" they had "specific and articulable facts which, taken together with rational inferences from those facts," gave them "a particularized and objective basis for suspecting [Renteria] of criminal activity." (Punctuation omitted.) *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994), citing to and quoting from *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968); *United States v. Cortez*, 449 U. S. 411 (101 SC 690, 66 LE2d 621) (1981); and *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979). A review of the sup-

---

[1] Although there is no basis in the record for the trial court's conclusion that Flores carried his burden to show standing to challenge the stop or search of the vehicle driven by Renteria, the State did not enumerate this finding as error, so the issue is not presented on appeal. *Hyde v. State*, 275 Ga. 693, 694-695 (572 SE2d 562) (2002); *Atwater v. State*, 233 Ga. App. 339, 340 (503 SE2d 919) (1998).

pression hearing shows that there was ample, undisputed evidence to support the stop under this standard. Moreover, since the trial court made no findings as to the facts or the credibility of witnesses, and the basic facts at issue are not in dispute, the trial court's application of the applicable standard to the undisputed facts is subject to de novo review. *Vansant*, 264 Ga. at 320.

The State produced evidence that, as part of an ongoing investigation, DeKalb County narcotics officers began surveillance on the apartment at issue in April 2001. During the course of the surveillance, they became familiar with various persons who frequented the apartment and the vehicles they drove. On April 25, 2001, a Ford F-150 truck driven by Perez was seen arriving at the apartment. Perez entered the apartment and came out with Pineda. While talking to Perez outside the apartment, Pineda was observed opening the hood of a Toyota truck and placing a package under the hood. Perez then backed out of his parking space and waited until Pineda in the Toyota truck pulled up behind him. They then drove from the apartment, one following the other, with surveillance officers following both vehicles. After the vehicles reached Interstate 85, an officer in a marked vehicle observed the Toyota making an improper lane change and stopped Pineda for the traffic violation. A drug dog brought to the scene of the stop detected the scent of contraband at the hood of the vehicle, and a search under the hood produced methamphetamine hidden in the air filter compartment of the vehicle. During the traffic stop, officers saw Perez in the F-150 truck circle back and drive by the stop scene to watch the stop.

While conducting surveillance of the apartment on May 31, 2001, officers saw Perez and Coria arriving at the apartment, Perez driving a gold Honda Accord and Coria driving a Z-71 truck. Perez and Coria were later seen leaving the apartment in the Z-71 truck driven by Coria. The two were observed driving to a nearby shopping center where Coria exited and got into a small blue car. While Coria was driving the blue car, police officers observed a traffic offense, stopped Coria, and obtained his consent to search the car. During the search, officers found $9,000 on Coria's person, which was seized by federal DEA agents, who were assisting in the narcotics investigation.

On June 20, 2001, the gold Honda driven by Renteria was seen arriving at the apartment and being parked next to the Z-71 truck. Officers observed Renteria take three large detergent boxes from the bed of the truck and put them in the Honda. After Renteria drove the Honda from the apartment, officers who continued surveillance on the vehicle observed a traffic violation and stopped the Honda. During the stop, a drug dog alerted to the scent of contraband on the exterior of the vehicle, and in a search of the interior officers found a

false compartment where the passenger side air bag should have been located. However, no drugs were found in the vehicle. The State produced evidence that a trained drug dog will alert to the scent of trace residue where contraband has been, even where no contraband is found.

On July 13, 2001, officers conducting continuing surveillance on the apartment saw Flores arrive at the apartment driving the same gold Honda Accord. After Flores entered the apartment, Renteria, Perez and Flores came out and were seen taking boxes from a Ford Crown Victoria and moving them into the apartment. Officers observed that the license tag on the Crown Victoria had previously been seen on the Honda. A short time after Renteria, Flores and Perez were seen entering the apartment with the boxes, Hernandez and Rojas appeared at the apartment in the F-150 truck, and Rojas was seen carrying a laundry basket up to the apartment. Thereafter, Cruz, Cardenas and a second Perez arrived at the apartment in a van. Renteria came out and engaged in conversation with the driver of the van, after which the van passengers were seen carrying two bags into the apartment. After this activity, Hernandez and Rojas were seen coming out of the apartment carrying the laundry basket which appeared heavier than when it arrived. Hernandez put the laundry basket in the back seat of the F-150 truck.

At this point, Hernandez and Rojas drove off from the apartment in the F-150 truck, but were stopped a few miles from the apartment by surveillance officers who saw Hernandez speeding and almost striking another vehicle in a reckless lane change. The drug dog officer arrived within a minute of the traffic stop, and the dog alerted to the scent of contraband on the exterior of the truck. In the subsequent search of the interior of the truck, the drug dog alerted on the laundry basket which Hernandez brought out of the apartment. After over two pounds of methamphetamine were found in the basket, Hernandez and Rojas were arrested at the scene.[2]

About three hours after the methamphetamine was found in the search of the truck, officers saw Renteria come out of the apartment carrying a black bag, which he put in the back seat of the Z-71 truck. A few seconds later, Flores came out of the apartment, spoke briefly to Renteria, then got into the Honda. Renteria then pulled out from his parking space in the Z-71 truck and waited until Flores pulled up behind him in the Honda. Both cars drove away from the apartment, Flores following Renteria, until both were stopped by surveillance

---

[2] In a related ruling at the suppression hearing on Hernandez's motion to suppress the methamphetamine found in the search, the trial court denied the motion finding that the stop was valid and that the search was properly conducted with probable cause after the drug dog alerted on the exterior of the truck.

officers about a half-mile from the apartment. It is undisputed that the officers did not stop the cars based on traffic violations. Rather, considering all the facts which had been gathered at that point in the investigation, the officers acted on the belief that they had a sufficient basis to conduct a stop to investigate their suspicion that Renteria and Flores were moving methamphetamine from the apartment.

To summarize, when the officers stopped Renteria on July 13 on the suspicion that he was transporting methamphetamine from the apartment, they had previously found methamphetamine in the vehicle driven from the apartment by Pineda on April 25; had previously found methamphetamine in the truck driven from the apartment by Hernandez on July 13 (just three hours prior to the stop), and had previously found and seized $9,000 on the person of an individual who had just left the apartment on May 31. In the July 13 Hernandez stop, the methamphetamine was found in a laundry basket which officers saw taken into the apartment, then carried out of the apartment and loaded into the truck. Renteria and Flores were at the apartment on July 13 when Hernandez and Rojas carried out the laundry basket containing methamphetamine. Renteria and Flores were also seen on July 13 moving boxes into the apartment from a Crown Victoria, which displayed a license tag which had been removed from the Honda Accord. A drug dog had previously alerted to the scent of contraband on the Honda, which also had a false compartment suitable for concealing contraband. Renteria was driving the Honda on June 20 when the drug dog alerted on it and the false compartment was discovered. Finally, the manner in which Renteria pulled away from the apartment on July 13 in the Z-71 truck while waiting for Flores to pull up behind and follow him in the Honda suggested the same modus operandi that the officers observed when Pineda and Perez left the apartment in separate vehicles on April 25 when methamphetamine was found in Pineda's vehicle.

The record shows specific and articulable facts which, together with rational inferences the experienced narcotics officers were entitled to draw from the facts, gave the officers a particularized and objective basis for suspecting that Renteria was transporting methamphetamine when he was stopped. To conclude otherwise, as the dissent does, places an unrealistically high burden on police before allowing them to conduct reasonable investigative stops. Accordingly, we conclude the stop of Renteria to investigate the suspicion of criminal activity was reasonable under the Fourth Amendment. *Vansant*, 264 Ga. at 320.

The search of Renteria's truck which followed the stop and produced the methamphetamine was reasonable because it was based on probable cause. Having a sufficient basis for the investigatory

stop, the officers were justified in using a drug dog within the scope of the stop to sniff around the exterior of the truck for the scent of contraband. *Cole v. State*, 254 Ga. App. 424, 425-426 (562 SE2d 720) (2002). A trained drug dog sniffing the exterior of a stopped vehicle is not a search within the meaning of the Fourth Amendment. Id. When the drug dog detected the scent of contraband, this provided the officers with probable cause to conduct the warrantless search of the truck which produced the methamphetamine. *State of Ga. v. Montford*, 217 Ga. App. 339, 341 (457 SE2d 229) (1995); *McKinney v. State*, 184 Ga. App. 607, 609-610 (362 SE2d 65) (1987). It follows that the trial court erred by granting the motions of Renteria and Flores to suppress the methamphetamine found in the search.

*Judgment reversed. Johnson, P. J., Eldridge, Mikell and Adams, JJ., concur. Blackburn, P. J., and Barnes, J., dissent.*

BLACKBURN, Presiding Judge, dissenting.

The arresting officers in this case had absolutely no particularized information supporting a reasonable belief that the defendants were engaged in criminal activity at the time they were stopped. Accordingly, I must respectfully dissent.

This case involves a *Terry*[3] stop in which an officer conducts a brief investigative stop of a citizen. In this type of stop, "a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity." (Punctuation omitted.) *Lewis v. State*.[4] "[T]he officer must possess more than a subjective, unparticularized suspicion or hunch, but rather a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing." (Punctuation omitted.) Id. at 561 (1).

In *State v. Mallard*,[5] members of a drug task force were preparing to execute a search warrant on the residence of a suspected drug dealer when a car containing two unidentified men left the residence. The task force called an officer to inform her of the departure, and the officer stopped the car about a half-mile from the residence to determine if the drug dealer was in the vehicle. The officer determined that the dealer was not in the car but arrested the two occupants of the car when they were found to be in possession of marijuana. The two defendants moved to suppress the evidence, and the trial court granted the motion. We affirmed the trial court's grant of the defendants' motion to suppress, finding that "there was no basis

---

[3] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).
[4] *Lewis v. State*, 233 Ga. App. 560 (1) (504 SE2d 732) (1998).
[5] *State v. Mallard*, 246 Ga. App. 357 (541 SE2d 46) (2000).

to believe that either [defendant was] involved in criminal activity at the time of the stop." Id. at 360.

In explaining our reasoning in *Mallard*, we contrasted our decision in the case with the decision of our Supreme Court in *Garmon v. State*[6] in which a stop was found to be justified. The *Garmon* court held that "the investigative stop was justified under *Terry* because there were some objective manifestations that the occupant in the vehicle leaving the search location was engaged in criminal activity." *Mallard*, supra at 361. The Court noted that a number of factors supported a reasonable belief that persons at the residence might be involved in criminal activity, including: the existence of a search warrant for the residence; the fact that "the driver and his companion were leaving a residence suspected as a location for dealing in controlled substances and an illegal sports betting operation, which was operating *at that time* since it was a big football weekend"; the fact "that the truck was owned by a known methamphetamine dealer"; the fact "that the officers had overheard telephone conversations discussing gambling and a drug deal"; and the fact "that the officers had independent information which supported a reasonable belief that the men in the truck were involved in the operation." Id. The Court concluded that "[t]his totality of the circumstances provided an articulable suspicion to justify the stop." Id.

By contrast, in the case before us, while there was a basis for believing that a particular residence was the center of criminal activity, there was no particularized and objective basis for suspecting that these particular defendants, Flores and Renteria, were involved in that activity at the time they were stopped. The officers had no search warrant for the apartment, or for either Renteria's vehicle or Flores's vehicle. The officers had no independent information which supported a reasonable belief that Renteria and Flores were involved in a drug operation at the time they were actually stopped. In fact, as in *Mallard*, the officers who made the stops had no specific information about the occupants of the cars since "the decision was made [that] anybody leaving was going to be stopped based on the fact that there were narcotics in the apartment." This latter factor alone indicates that the officers were acting on a subjective, unparticularized suspicion or hunch that any persons leaving the apartment were involved in illegal activities. Such subjective, unparticularized suspicion was insufficient to justify the stops of Renteria and Flores. Because "the police had no specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct by these defendants and thus could not meet the requirements of *Terry*," id. at 365,

---

[6] *Garmon v. State*, 271 Ga. 673 (524 SE2d 211) (1999).

the trial court did not err in granting defendants' motions to suppress.

BARNES, Judge, dissenting.

The record shows that the police had no reasonable suspicion which would warrant the stop of the vehicles of Flores and Renteria, but even if reasonable suspicion existed, that would not be sufficient to authorize the stop in this case because the evidence clearly shows that this was not a *Terry* stop. Today, the majority expands the concept of a *Terry* stop far beyond what our law has previously recognized. After this decision, the police will be authorized to stop and search anyone who leaves a location that has been under police surveillance solely because another person who left the location was found to have drugs in her possession, and not because of anything the person stopped may have done. As I cannot agree with this result, I must respectfully dissent.

The evidence shows that Flores and Renteria were stopped by the police, even though they were not observed violating the law, because the police decided to stop all people leaving the apartment. In my opinion, this decision removes this case from the typical *Terry* stop category of cases.

The motions to suppress the evidence seized as a result of these stops asserted that the traffic stops of Flores and Renteria were not based on reasonable articulable suspicion because no evidence showed that Flores carried any boxes, and that the traffic stops were unreasonable because the decision to make the stops was based on events that occurred three hours and twenty minutes earlier: "As soon as [two police officers] advised what was found in the first vehicle, the decision was made [that] anybody leaving was going to be stopped based on the fact that there were narcotics in the apartment."[7]

The officer who testified at the motion to suppress hearing admitted that he saw no criminal activity, saw no exchange of money, had no wiretap information, heard no conversations, and had conducted no controlled buy. The State contends, however, that the stops of Flores and Renteria were lawful because they were based on the collective knowledge of the law enforcement officers. Even so, this information would not warrant stopping Flores and Renteria.

Based upon the totality of the circumstances, a detaining officer with a particularized and objective basis for *suspecting the person stopped of criminal activity* may detain the person for investigation.

---

[7] Although an application for a search warrant for the apartment was prepared, the warrant was not signed, and the warrant was not executed until later that evening.

*Postell v. State of Ga.*, 264 Ga. 249 (443 SE2d 628) (1994). Consequently,

> [a]n authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. A *Terry* stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct.

(Punctuation omitted.) *Buffington v. State*, 228 Ga. App. 810, 811 (492 SE2d 762) (1997). " '(T)he existence of an articulable suspicion can be based on the collective knowledge of law enforcement officials'; a detaining officer is 'entitled to rely on the information given him by a fellow officer in the formation of an articulable suspicion.' [Cit.]" Id. at 811. Here, of course, the decision to stop these men was not based upon anything Flores and Renteria were doing, but, was instead based upon something someone else had done miles away and hours earlier. The collective knowledge of the law enforcement officers in this case did not encompass any activities of Flores and Renteria; instead, it concerned the activities of others.

Our Supreme Court has recognized that

> the essence of the elusive concept was to take the totality of the circumstances into account and determine whether *the detaining officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity*.

(Citation and punctuation omitted; emphasis supplied.) *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994).

Thus,

> a law enforcement officer may conduct a constitutional investigatory stop of an individual when the officer is able to point to specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant that intrusion. Over a decade later, the Court restated the standard when it held that *an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. United States v. Cortez*, 449 U. S. 411, 417 (101 SC 690, 66 LE2d 621) (1981). The *Cortez* [C]ourt went on to elaborate: based upon the totality of the circumstances, the detaining officers must have a particularized and objective

basis for suspecting the particular person stopped of criminal activity. Thus, the inferences and deductions of a trained officer, drawn from objective observation, must raise a suspicion that *the particular individual being stopped is engaged in wrongdoing*. This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence.

(Citations and punctuation omitted; emphasis supplied.) *Postell v. State of Ga.*, supra, 264 Ga. at 249. Here, the police do not even contend that Flores and Renteria were engaged in any such conduct. The decision to stop them was entirely based on the fact that others had been found in possession of methamphetamine and activities that had occurred much earlier.

Further, the majority has ignored earlier cases in which this court, under similar circumstances, has found that the stops were not authorized under *Terry*. In *State v. Mallard*, 246 Ga. App. 357, 364-365 (541 SE2d 46) (2000), in a well-reasoned opinion, this court held that, even though the police were ready to execute a search warrant at a home, the police had no authority to stop a vehicle just because it left a residence where the warrant was about to be executed. We held that we would

follow our Supreme Court's approach in *Garmon* [*v. State*, 271 Ga. 673 (524 SE2d 211) (1999)], and apply a *Terry* analysis. In *Garmon*, [supra], our Supreme Court held, inter alia: under the totality of the circumstances, *the investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. Postell v. State*, citing *United States v. Cortez*. Such articulable suspicion that the law has been or is about to be violated is less than probable cause, but greater than mere caprice. What is necessary is a founded suspicion, some basis from which the court can determine that the detention was not arbitrary or harassing. Thus, in cases where there are some reasonable articulable grounds for suspicion, the state's interest in the maintenance of community peace and security outweighs the momentary inconvenience and indignity of investigatory detention. Here, the police had no specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct by these defendants and thus could not meet the requirements of *Terry*, supra.

(Citations, punctuation and footnotes omitted; emphasis supplied.)

Id. Accord *Emery v. State*, 249 Ga. App. 114, 115 (548 SE2d 23) (2001) (State adduced no evidence supporting a founded suspicion that driver of vehicle stopped was engaged in or was about to be engaged in criminal activity). Therefore, following the analysis in *Mallard* and *Emery*, I cannot agree that the police had a reasonable suspicion to stop Flores and Renteria.

The majority's focus on whether the conduct of Flores and Renteria was sufficient to create a reasonable suspicion of criminal activity warranting further investigation is misplaced. The facts demonstrate clearly that the traffic stop was not based on any such determination. The evidence shows that they were stopped because they departed from the apartment under surveillance, and that the decision to stop them was based on the fact that two other men were apprehended in possession of methamphetamine some three hours earlier. They were stopped because, even though no officer had been in the apartment, the police believed that narcotics were in the apartment. The police had no information from a confidential informant about any drugs and no wiretap saying the suspects were moving the drugs, and had made no controlled buys from the apartment; all they had was their surveillance of the apartment.

Although I agree with the trial court's conclusion that the police lacked a particularized and objective basis for suspecting that Flores and Renteria were engaged in criminal activity when they were stopped, I also believe that under the evidence in this case, the police were required to meet the higher standard of probable cause.

This was not a *Terry* stop to determine whether Flores and Renteria were engaged in criminal conduct. "A *Terry* stop is a brief detention by an officer who suspects an offense is being committed or has been committed, for the purpose of clarifying or investigating the facts that gave rise to that suspicion. [Cits.]" *McKenzie v. State*, 208 Ga. App. 683, 684 (1) (431 SE2d 715) (1993). Instead, Flores and Renteria were stopped so the police could search their vehicles for narcotics.

They were not the subjects of a valid *Terry* stop; they were arrested. "[A] person is under arrest whenever his liberty to come and go as he pleases is restrained, no matter how slight such restraint may be." *Collier v. State*, 244 Ga. 553, 561 (3) (261 SE2d 364) (1979). "Detention beyond that authorized by *Terry* is an arrest, and, to be constitutional, such an arrest must be supported by probable cause. Probable cause to arrest exists where, based on objective facts and circumstances, a man of reasonable caution would believe that a crime has been or is being committed." (Citation omitted.) *Williams v. State*, 251 Ga. 749, 792 (8) (a) (ii) (312 SE2d 40) (1983). " 'Probable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances sur-

rounding a transaction.' " *Norman v. State*, 214 Ga. App. 408, 409 (448 SE2d 219) (1994).

Even considering the collective knowledge of the officers, see *Maxwell v. State*, 249 Ga. App. 747, 748 (549 SE2d 534) (2001), and the totality of the circumstances, I cannot find that the stop of Flores and Renteria was based on probable cause to warrant a stop of their vehicles. No officer testified that they were stopped because of anything they were doing or not doing at the time of the stop, or that the officers had any reason to believe that drugs were in the cars. Indeed, the State conceded that the men had not committed a traffic violation. Instead, the men were stopped because they had departed from the apartment that was under surveillance and because some other men, who also had departed that apartment, were found some three hours earlier to be in possession of illegal drugs. Even if the police suspected that Flores and Renteria were carrying drugs because of their previous actions or the actions of others, in the absence of a particularized and objective manifestation *at the time of the stop* that Flores and Renteria were then or were about to be engaged in criminal activity, the police could not legitimately stop them under *Terry.* *Garmon v. State*, supra; *Emery v. State*, supra; *State v. Mallard*, supra.

If the majority's theory is correct, the authorities may now, with impunity, stop and search anyone they suspect might be engaged in criminal activity even though there was no present objective manifestation that the person stopped was then or was about to be engaged in criminal activity. I do not believe this to be our law.

The officer who directed the stop of Flores and Renteria testified, "We knew a crime had been committed and drugs were found." No information the State provided concerned the activities of Flores and Renteria.

At best the decision to stop them was based on a mere hunch that anyone leaving the apartment might have drugs. A hunch, however, is not a valid reason to authorize a traffic stop, *State v. White*, 197 Ga. App. 426, 427 (398 SE2d 778) (1990), much less an arrest. And this is not a situation where the men were fleeing. Compare *State v. Billoups*, 191 Ga. App. 834, 835 (383 SE2d 198) (1989).

In these circumstances, I believe that the trial court did not err by granting the motions to suppress, and, therefore, the judgment of the trial court should be affirmed. Accordingly, I must respectfully dissent.

DECIDED JULY 16, 2003 — ▆▆▆▆▆▆▆▆

*J. Tom Morgan, District Attorney, Alison T. Burleson, Shawn E. LagGrua, Assistant District Attorneys*, for appellant.

*Cromwell & Hibbert, William G. Cromwell, Henry A. Hibbert, Corinne Mull-Milsteen*, for appellees.

