887 A.2d 1108

**STATE of Maryland**

v.

**Donovan Anthony HARDING.**

**No. 637, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Dec. 7, 2005.

Mary Ann Ince (Kathryn Grill Graeff, J. Joseph Curran, Jr., Atty. Gen., on brief), for appellant.

Stephen B. Mercer (Rene Sandler, on brief), Rockville, for appellee.

Panel ADKINS, MEREDITH and WOODWARD, JJ.

MEREDITH, J.

In this case, the State appeals from an order granting a motion to suppress evidence discovered during a search of the appellee's vehicle. The motions court suppressed evidence of marijuana and a handgun found in the modified air bag compartment of appellee's vehicle. We shall reverse the decision of the Circuit Court for Prince George's County, and remand the case for further proceedings.

## Background

When State Trooper J.D. Cameron stopped Donovan Anthony Harding, appellee, for speeding on Interstate 95 in Prince George's County, the police officer immediately smelled a strong odor of burnt marijuana emanating from the passenger compartment of Harding's Toyota Tundra pickup truck. The officer promptly called for backup, and after a second trooper arrived, searched Harding's vehicle inside and out for the source of the odor. The search initially turned up a number of pine-tree air fresheners.

After searching for approximately eight minutes, having failed to discover the source of the marijuana odor in any of the readily accessible areas of the vehicle, Trooper Cameron began to search for hidden compartments in the vehicle. The officer had learned during the course of his drug-interdiction training that a vehicle's air bag compartment could be modified and used for hiding contraband. Using a screwdriver, the officer pried up the cover of the passenger-side air bag compartment and discovered that the air bag had been removed. A hydraulic piston had been attached to the cover. In the air bag compartment were a pistol, a plastic bag that appeared to contain marijuana, and a partially-smoked marijuana joint.

Less than ten minutes after the search of the vehicle commenced, when the contraband in the air bag compartment was discovered, Harding was placed under arrest. The police officers had Harding's truck towed to their barrack, where they continued their thorough search of the vehicle. As a result of that further search, the officers discovered a large package of additional marijuana hidden in a spare tire that was in the covered bed of the pickup truck. Harding was charged with illegal possession of narcotics and the handgun.

Harding moved to suppress the evidence that was discovered in the truck. At the hearing on the motion to suppress, Trooper Cameron was the only witness to testify. An audio-video recording of the traffic stop and search was also introduced at the suppression hearing. Cameron described his

traffic stop of Harding for speeding (traveling 73 miles per hour when the speed limit on Interstate 95 was 65 miles per hour). Cameron testified that he detected a very strong odor of marijuana as soon as he approached Harding's pickup truck and spoke to Harding, while Harding was still seated in the driver's seat. Cameron was of the opinion that the odor of marijuana gave him the authority to conduct "a probable cause search" of Harding's vehicle. Cameron noted that he had received training in drug interdiction that included training regarding the alteration and use of air bag compartments for hiding drugs. He explained that he decided to probe Harding's air bag compartment because the seam did not look quite straight. Cameron also testified that he eventually discovered the air bag compartment in Harding's vehicle had been fitted with a hydraulic piston and electrical wiring that enabled the cover of the air bag compartment to be remotely opened and closed.

The motions judge expressly found Trooper Cameron "to be a credible witness" who had been with the State Police for several years. The motions judge further credited the officer's testimony that Harding was initially stopped for driving 73 in a 65 mile per hour zone. The motions judge also accepted as credible Trooper Cameron's testimony regarding the odor of marijuana. The judge stated: "[W]hen [Trooper Cameron] first approached the defendant's vehicle [he] smelled an odor of burnt marijuana. His training was such that he was able to detect that. He used to detect that odor in the past. I accept that testimony as credible."

The motions judge noted that "after 32 minutes," and after Cameron had made a comment (recorded on the tape) surmising that Harding probably ate the marijuana cigarette, Cameron used a screwdriver to pry open the air bag compartment, where Cameron found marijuana and a gun.

After reviewing the facts, the motions judge framed the dispute as a question of whether the police officer had probable cause to open the air bag compartment, noting, "[the prosecutor] has argued that there was probable cause to open

the air bag compartment. [Defense counsel] has argued that there did not exist probable cause to open the air bag compartment." The court focused upon two cases cited by Harding in support of the suppression motion—*Ferris v. State,* 355 Md. 356, 735 A.2d 491 (1999), and *Charity v. State,* 132 Md.App. 598, 753 A.2d 556, *cert. denied,* 360 Md. 487, 759 A.2d 231 (2000)—and granted the motion to suppress, stating:

I conclude for purposes of this hearing that when Trooper Cameron detected the [odor] of marijuana he had a reasonable articul[able] suspicion that criminal activity was a[ ]foot. And was justified in [co]nducting a search of the interior of the vehicle.

Now, the question now becomes to what extent was the Trooper justified in searching the interior of the vehicle. And if indeed he was so justified as I concluded based on reasonable articul[able] suspicion how long could that go on.

\*     \*     \*

... This search continued as I said some 32 minutes. And I may be off a minute or two on the low side. And before any contraband either the gun and marijuana was found. There is no hard and fast rule as these case[s] point [out] ... as to how long a search shall continue. But, the authority (unintelligible) reference what seems to be a reasonable period of time....

What is troubling in this particular case and this is no reflection upon the integrity of Trooper Cameron, but when he took the screwdriver to pry open the air bag compartment that [sic] the sense it was not flush with an air bag, but contained something other than that. I have to respectfully disagree with [the prosecutor]. I knew that there was not probable cause to go into that compartment. Reasonable articula[ble] suspicion certainly had terminated on [sic] concluded by the first 30 minutes wherein all the obvious compartments that were not locked had been opened and no contraband had been found. And what is also important here is that Trooper Cameron had stated that he suspected, although he wasn't certain, that the defendant may indeed

had [sic] swallowed the marijuana cigarette that may have caused permeation odor of burnt marijuana.

This is not something that I relish. But, it's something I believe the authority dictate [sic]. I conclude that there was not probable cause to go ahead and open the closed air bag compartment on the passenger side. And I must conclude that the motion to suppress evidence is granted. That means anything else that flowed therefrom[, counsel,] must also be suppressed because that obviously flows from that search.

Certainly, it may be appealed. And I may be wrong.

Pursuant to Md.Code (1973, 2002 Repl.Vol.), Courts and Judicial Proceedings Article, § 12–303(c)(3), the State exercised its option to pursue an interlocutory appeal of the circuit court's decision to suppress this evidence that is critical to the State's case.

## Analysis

It is not clear whether the motions judge ultimately based his ruling upon a determination that the search took too long to discover the hidden compartment, or whether the ruling was based upon the assumption that the officer needed particularized probable cause to search the air bag compartment. In either event, we conclude the circuit court was in error.

In our view, the initial traffic stop was clearly justified by Harding's speeding. After making the traffic stop, as soon as the police officer detected a strong odor of marijuana coming from inside the pickup truck, there was probable cause to search the vehicle, including any hidden compartments, for concealed marijuana. When the officer then discovered contraband hidden in the air bag compartment, there was additional probable cause to take Harding into custody and tow the vehicle to the police station for the continued searching that led to the discovery of the drugs hidden in the spare tire. Harding's motion to suppress should have been denied.[1]

---

1. Because the State made no argument, either at the motions hearing or in this Court, that the search of Harding's vehicle might also have

## 1. Standard of Review

In reviewing a lower court's ruling on a motion to suppress, this Court extends "great deference to the fact finding of the suppression court and accepts the facts found by that court unless clearly erroneous." *Nathan v. State,* 370 Md. 648, 659, 805 A.2d 1086 (2002), *cert. denied,* 537 U.S. 1194, 123 S.Ct. 1303, 154 L.Ed.2d 1029 (2003). We are limited to considering the evidence introduced at the suppression hearing, and the inferences therefrom that are most favorable to the party who prevailed on the motion. *In Re Tariq A–R–Y,* 347 Md. 484, 488, 701 A.2d 691 (1997), *cert. denied,* 522 U.S. 1140, 118 S.Ct. 1105, 140 L.Ed.2d 158 (1998). But the ultimate decision on whether the evidence was seized in violation of the law is made independently of the lower court's decision. *Laney v. State,* 379 Md. 522, 534, 842 A.2d 773 (2004) ("We make our own constitutional appraisal as to whether an action taken was proper, by reviewing the law and applying it to the facts of the case."). The U.S. Supreme Court noted in *Ornelas v. U.S.,* 517 U.S. 690, 697, 699–700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), that when an appellate court reviews probable-cause or reasonable-suspicion determinations, the legal conclusions of the motions court are reviewed *de novo. Accord U.S. v. Arvizu,* 534 U.S. 266, 275, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ferris, supra,* 355 Md. at 368, 735 A.2d 491; *Jones v. State,* 111 Md.App. 456, 465–66, 681 A.2d 1190, *cert. denied,* 344 Md. 117, 685 A.2d 451 (1996).

## 2. The traffic stop

As Judge Raker explained for the Court of Appeals in *Ferris, supra,* 355 Md. at 369, 735 A.2d 491:

The Fourth Amendment protects against unreasonable searches and seizures, including seizures that involve only a brief detention.... The Supreme Court has made clear that a traffic stop involving a motorist is a detention which

---

been permitted as a search incident to arrest, *see New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), we do not consider that possible justification for the search.

implicates the Fourth Amendment. . . . It is equally clear, however, that ordinarily such a stop does not initially violate the federal Constitution if the police have probable cause to believe that the driver has committed a traffic violation. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). . . .

It is without dispute that the stop of [the defendant] by [the State trooper] for exceeding the posted limit constituted a seizure for Fourth Amendment purposes, but that such a seizure was justified by the probable cause possessed by the trooper in having witnessed [the defendant's] traffic violation.

Similarly, in Harding's case, the initial traffic stop was justified by the fact that Trooper Cameron personally observed Harding exceeding the posted speed limit. As Judge Moylan explained in *Charity, supra*, 132 Md.App. at 610, 753 A.2d 556, the fact that the traffic infraction was of a relatively minor nature does not lessen the officer's authority to make the initial stop: *"Whren v. United States* permits a narcotics officer to seize the opportunity presented by a traffic infraction to make a stop that would not otherwise be permitted. The narcotics officer need not apologize for this. The *'Whren* stop' is part of the arsenal [available to law enforcement officers]."

Although the *Whren* stop permits a police officer to stop a vehicle for a traffic infraction, there is a limit upon what constitutes a reasonable detention once the stop is made. As the Court of Appeals stated in *Ferris, supra*, 355 Md. at 372, 735 A.2d 491: "[O]nce the underlying basis for the initial traffic stop has concluded, a police-driver encounter which implicates the Fourth Amendment is constitutionally permissible only if either (1) the driver consents to the continuing intrusion or (2) the officer has, at a minimum, a reasonable, articulable suspicion that criminal activity is afoot."

In *Ferris* and *Charity*, because the police officers had no further probable cause to continue the detention of the vehicles beyond the brief period of time required to process and

issue traffic citations for the infractions that led to the stops, the evidence that was eventually discovered, during the unwarranted continued detention, was suppressed. Similar consequences followed from unwarranted detentions in *Pryor v. State*, 122 Md.App. 671, 716 A.2d 338, *cert. denied*, 352 Md. 312, 721 A.2d 990 (1998); *Whitehead v. State*, 116 Md.App. 497, 698 A.2d 1115, *cert. denied*, 348 Md. 207, 703 A.2d 148 (1997); and *Munafo v. State*, 105 Md.App. 662, 660 A.2d 1068 (1995).

Notwithstanding the conclusions in those specific cases, however, in *Charity*, this Court cautioned: "Even a very lengthy detention may be completely reasonable under certain circumstances." 132 Md.App. at 617, 753 A.2d 556. And, we emphasized, "We repeat that in processing a traffic infraction the police are not to be monitored with a stop-watch." *Id. See also Wilkes v. State*, 364 Md. 554, 576, 774 A.2d 420 (2001) ("The Supreme Court has expressly rejected imposing rigid time limitations on traffic stops.").

In Harding's case, however, the duration of the initial traffic stop is not an issue because there was clearly no unreasonable delay before the officer discovered the probable cause to search the vehicle. Upon Trooper Cameron's initial approach to the vehicle, the officer immediately detected a strong odor of marijuana coming from the interior of Harding's pickup. Consequently, Trooper Cameron quickly satisfied the requirement set forth in *Ferris* for continued detention of Harding (*i.e.*, "the officer has, at a minimum, a reasonable, articulable suspicion that criminal activity is afoot," *Ferris, supra*, 355 Md. at 372, 735 A.2d 491). Indeed, the motions judge acknowledged that when Trooper Cameron smelled the odor of marijuana, the officer had, at a minimum, a reasonable articulable suspicion that criminal activity was afoot. In contrast to the traffic-stop cases cited above in which the courts condemned the continued detention because the police officers used the detention to try to come up with probable cause, in Harding's case, Trooper Cameron had, at

or near the very outset of the encounter, probable cause to believe the pickup contained contraband.

### 3.  Probable Cause That Vehicle Contained Contraband

Any question as to whether the odor of marijuana alone can provide a police officer probable cause to search a vehicle was dispelled by the Supreme Court in *United States v. Johns*, 469 U.S. 478, 482, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), where Justice O'Connor wrote for the Court: "After the officers came closer and detected the distinct odor of marijuana, they had probable cause to believe that the vehicles contained contraband." To similar effect, *see Ford v. State*, 37 Md.App. 373, 379, 377 A.2d 577 ("knowledge gained from the sense of smell alone may be of such character as to give rise to probable cause for a belief that a crime is being committed in the presence of the officer"), *cert. denied*, 281 Md. 737 (1977). *See also United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (smell of mash whiskey); *Seldon v. State*, 151 Md.App. 204, 232, 824 A.2d 999 (odor of cocaine, if believed, would have established probable cause), *cert. denied*, 377 Md. 114, 832 A.2d 206 (2003); *Mullaney v. State*, 5 Md.App. 248, 257, 246 A.2d 291 (1968) ("That the smell of distinctive odors can constitute evidence of crime and of probable cause is well settled."), *cert. denied*, 252 Md. 732 (1969); Andrea L.. Ben–Yosef, Annotation, *Validity of Warrantless Search of Motor Vehicle Based on Odor of Marijuana—State Cases*, 114 A.L.R.5th 173, 189 (2003) ("The majority of courts have found that the odor of marijuana alone supplies the probable cause for a warrantless search."); Andrea L. Ben–Yosef, Annotation, *Validity of Warrantless Search of Motor Vehicle Based on Odor of Marijuana—Federal Cases*, 188 A.L.R. Fed. 487, 497 (2003)(same).

### 4.  The *Carroll* Search of the Air Bag Compartment

Although the contraband in Harding's case was marijuana rather than bootleg whiskey, his case is nevertheless similar to the landmark case of *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), in which the

Supreme Court held that police officers who had probable cause to believe an automobile was carrying illegal liquor could conduct a probing search of the vehicle without seeking a warrant. Because the Carrolls' liquor was hidden in the upholstered back of a car seat, the officers had to cut into the upholstery to find the contraband. The bootleggers' motion to suppress the evidence was denied, and that ruling was affirmed by the Supreme Court. This "automobile exception" to the Fourth Amendment's warrant requirement remains applicable today for vehicles suspected of transporting concealed contraband. *See State v. Wallace,* 372 Md. 137, 146, 812 A.2d 291 (2002) ("Presently known as the 'Carroll Doctrine,' the exception allows vehicles to be searched without a warrant provided that the officer has probable cause to believe that a crime-connected item is within the car."), *cert. denied,* 540 U.S. 1140, 124 S.Ct. 1036, 157 L.Ed.2d 951 (2004); *Mobley v. State,* 270 Md. 76, 81, 310 A.2d 803 (1973) (warrantless search of vehicle permitted when officer has reason to believe vehicle contains contraband), *cert. denied,* 416 U.S. 975, 94 S.Ct. 2003, 40 L.Ed.2d 564 (1974).

In *United States v. Ross,* 456 U.S. 798, 799–800, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court made plain that a *Carroll* search could include compartments and containers that might be used for hiding contraband within a vehicle. The Court stated:

> In *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, the Court held that a warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband was not unreasonable within the meaning of the Fourth Amendment. The Court in *Carroll* did not explicitly address the scope of the search that is permissible. In this case, we consider the extent to which police officers—who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it—may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view. We hold that they may conduct a search of the

vehicle that is as thorough as a magistrate could authorize in a warrant "particularly describing the place to be searched." [Quoting the Fourth Amendment.]

The Court in *Ross* noted: "In *Carroll* itself, the whiskey the prohibition agents seized was not in plain view. It was discovered only after an officer opened the rumble seat and tore open the upholstery of the lazyback." 456 U.S. at 817, 102 S.Ct. 2157. The Court in *Ross* explained that the agents in *Carroll* had probable cause to suspect that the vehicle was transporting contraband, and, as a consequence, the agents "were entitled to tear open a portion of the roadster itself." *Id.* at 818, 102 S.Ct. 2157. *Cf. Nathan, supra,* 370 Md. at 656, 805 A.2d 1086 (police officer who had probable cause to suspect a modified ceiling in a van concealed a hidden compartment that contained contraband "tore open the ceiling" and "discovered a secret compartment containing [drugs]").

The Court reasoned in *Ross,* 456 U.S. at 818, 102 S.Ct. 2157:

The scope of the search [of the Carrolls' vehicle] was no greater than a magistrate could have authorized by issuing a warrant based on probable cause that justified the search. Since such a warrant could have authorized the agents to open the rear portion of the roadster and to rip the upholstery in their search for concealed whiskey, the search was constitutionally permissible.

The Court further explained in *Ross, id.* at 821, 102 S.Ct. 2157:

A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between ... glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

This rule applies equally to all containers, as indeed we believe it must.

*Accord California v. Carney,* 471 U.S. 386, 395, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)("This [warrantless] search [of defendant's mobile home] was not unreasonable; it was plainly one that the magistrate could authorize if presented with these facts.").

In *Wyoming v. Houghton,* 526 U.S. 295, 301, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), the Court again emphasized the broad scope of the search that may be performed when police officers have probable cause to believe a vehicle is carrying concealed contraband:

> *Ross* summarized its holding as follows: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." [456 U.S.] at 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (emphasis added [by *Wyoming* Court] ). And our later cases describing *Ross* have characterized it as applying broadly to *all* containers within a car, without qualification as to ownership. [Emphasis in original.]

After noting that *Ross* had cited historical precedent for customs agents to conduct probing searches of vehicles for concealed contraband, the Court in *Wyoming v. Houghton* rejected the argument that the officers needed to have particularized cause to search specific containers within the vehicle, stating, *id.* at 302, 119 S.Ct. 1297:

> When there is probable cause to search for contraband in a car, it is reasonable for police officers-like customs officials in the founding era-to examine packages and containers *without a showing of individualized probable cause for each one* [emphasis added]. A passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are "in" the car, and the officer has probable cause to search for contraband *in* [emphasis in original] the car.

*Cf. Nathan, supra,* 370 Md. at 666, 805 A.2d 1086 ("If supported by probable cause, every part of a vehicle that may conceal the object of the search may be searched."). *See also*

*California v. Acevedo,* 500 U.S. 565, 579, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) ("The interpretation of the *Carroll* doctrine set forth in *Ross* now applies to all searches of containers found in an automobile. In other words, the police may search without a warrant if their search is supported by probable cause.").

Consequently, the motions judge erred in concluding that, even though Trooper Cameron had probable cause to search Harding's vehicle for concealed marijuana, there was no probable cause to suspect that contraband might be concealed within the dashboard's passenger-side air bag compartment. As the Supreme Court explained in *Wyoming v. Houghton, id.* at 302, 119 S.Ct. 1297: "*Ross* concluded from historical evidence that the permissible scope of a warrantless car search 'is defined by the object of the search and the places in which there is probable cause to believe that [the object of the search] may be found.' 456 U.S., at 824, 102 S.Ct. 2157, 72 L.Ed.2d 572." *Accord State v. James,* 87 Md.App. 39, 47, 589 A.2d 81 (1991) ("A search of every part of the automobile, including containers within it that may conceal the object of the search, is permitted," and the officer "properly pursued a search of the area behind the kick panel.")

In Harding's case, it was not only theoretically possible that marijuana-and even a partially—smoked joint—might be concealed within Harding's air bag compartment; these items of contraband that were the object of Harding's search were, in fact, concealed within the air bag compartment. Because Trooper Cameron had received training in drug interdiction that gave him a basis for suspecting that the air bag compartment might be a possible hiding place, that "container" was within the permissible scope of the warrantless search of the vehicle. *Cf. United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (supporting an analysis of the "totality of the circumstances," that "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' "). That the searching officers looked first in more

common hiding places before inspecting the air bag compartment does not negate the probable cause to suspect that there could be a hidden compartment (such as a modified air bag cavity) in Harding's vehicle. As the Supreme Court stated in *California v. Acevedo,* 500 U.S. 565, 577, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), "the fact that the officer first chose to search in the most obvious location should not restrict the propriety of the search."

Because the air bag compartment was not the first place the officers searched, the motions judge could have reasonably inferred that the visual evidence of modification was not blatant. Nevertheless, the modification of the air bag cover was sufficiently noticeable to Trooper Cameron that he turned his attention to this area of the passenger compartment within ten minutes of beginning his search of the vehicle.

We also note that a *Carroll* doctrine search is not subject to the same limits of reasonable brevity as a simple traffic stop. *See U.S. v. Johns, supra,* 469 U.S. at 484, 105 S.Ct. 881. Consequently, a 32 minute search based upon probable cause to suspect contraband in the vehicle would not be unreasonable. Moreover, because the time the police officers spent actually searching Harding's vehicle was less than ten minutes before the hidden air bag compartment was opened, the search in this case was clearly not unreasonable in duration. Accordingly, the circuit court erred in suppressing the evidence discovered in the air bag compartment of Harding's vehicle.

Although this appears to be the first air bag search to reach the appellate courts in Maryland, we note that there are numerous reports of cases from around the country in which air bag compartments have been modified and used for the purpose of concealing contraband. *See, e.g., United States v. Oliva,* 385 F.3d 1111, 1113 (7th Cir.2004); *United States v. Duffaut,* 314 F.3d 203, 205 (5th Cir.2002); *United States v. Ortega,* 379 F.Supp.2d 1177, 1181 (D.Kan.2005); *United States v. Slater,* 351 F.Supp.2d 1214, 1223 (D.Utah 2005); *State v. Flores,* 262 Ga.App. 389, 391–92, 585 S.E.2d 714, 717, *cert.*

*denied,* 262 Ga.App. 389, 585 S.E.2d 714 (2003).  The incidence of such reports has increased in the past few years, and we have no doubt that persons in the drug trade will continue to find even more creative places to conceal drugs in vehicles in the years to come.

### 5.   The followup search of the vehicle at the police station

██   At the suppression hearing, little separate attention was given to the discovery of the drugs hidden in the spare tire, and the motions judge did not need to reach the issue of whether that evidence should be suppressed on independent grounds.   Maryland Rule 8–131(a) states that, aside from jurisdiction, "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." Although the issue of the validity of the continued search was raised below, that issue was certainly not decided by the circuit court, vitiated as it was by the ruling on the search of the air bag compartment.   Nonetheless, in order to avoid the expense and delay of another appeal, and because we believe the facts support a clear disposition, we shall rule upon the lawfulness of the continued search that led to the discovery of drugs in the spare tire.

The videotape of Harding's traffic stop showed that, during the search of Harding's truck, it was parked very close to the fast lane of southbound Interstate 95.   The vehicle was so near the roadway that, when the officers opened the passenger-side doors, those doors appeared to extend over the white line marking the edge of the fast lane.   As soon as the contraband was discovered in the air bag compartment, the police officers took Harding into custody, and arranged for transporting Harding's truck to their barrack.   Trooper Cameron testified that as soon as the truck arrived at the barrack, officers continued a thorough search of the vehicle to see if there was any further contraband.   Their search was rewarded when they found a large package of marijuana concealed in the spare tire that was in the covered bed of the pickup.

We have no hesitation in ruling that the continued search at the police station was valid, and that, therefore, the motion to suppress the evidence discovered in the spare tire should have been denied. This result is compelled by *United States v. Johns supra,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890. In that case, customs officers detected the distinct odor of marijuana as they approached pickup trucks that had packages loaded in the cargo areas. The officers removed the packages, and inspected them at the DEA headquarters three days later. The Supreme Court stated, *id.* at 484, 105 S.Ct. 881:

> There is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure....A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search.

*Accord Maryland v. Dyson,* 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)(*per curiam* ) ("the automobile exception does not have a separate exigency requirement: 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more.' ") (Quoting *Pennsylvania v. Labron,* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)(*per curiam* )).

In *U.S. v. Johns,* the Court further referred, with approval, to a footnote in *Ross* that observed, "if an immediate search on the street is permissible without a warrant, a search soon thereafter at the police station is permissible if the vehicle is impounded." *Ross, supra,* 456 U.S. at 807 n. 9, 102 S.Ct. 2157. *Accord United States v. Zucco,* 71 F.3d 188, 191 (5th Cir.1995) ("The automobile exception permits the authorities to search a vehicle at the police station without a warrant provided the search is supported by probable cause."), *cert. denied,* 519 U.S. 827, 117 S.Ct. 91, 136 L.Ed.2d 47 (1996). *See also Middleton v. State,* 10 Md.App. 18, 24–26, 267 A.2d 759, *cert. denied,* 259 Md. 734 (1970).

In his treatise on search and seizure, Professor LaFave observes:

[W]arrantless car searches are not likely to be jeopardized by delay in making the search. Indeed, any lingering doubts about the validity of delayed vehicle searches at the station have been dissipated by the Supreme Court's decision in *United States v. Johns.* ... [T]he Court, in upholding that search, rejected the notion "that searches of containers discovered in the course of a vehicle search are subject to temporal restrictions not applicable to the vehicle search itself." In other words, the search of the packages at that time without a warrant is permissible because a warrantless search of the vehicle would be lawful at that time. The latter search would be permissible the Court concluded in *Johns,* because it constitutes no greater intrusion upon possession or privacy than a search at the time of seizure, which clearly is permissible under the Court's prior decisions.

3 WAYNE R. LaFAVE, SEARCH & SEIZURE, § 7.2 at 555 (4th ed.2004). *See also Florida v. Meyers,* 466 U.S. 380, 382, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984)(*per curiam* ); *Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982)(*per curiam* )("the justification to conduct such a warrantless search does not vanish once the car has been immobilized"); *Texas v. White,* 423 U.S. 67, 68, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975)(*per curiam* )(" '(t)he probable-cause factor' that developed at the scene 'still obtained at the station house.' "); *Smith v. State,* 161 Md.App. 461, 480–81, 870 A.2d 1228 (2005); *Manno v. State,* 96 Md.App. 22, 38–39, 623 A.2d 677, *cert. denied,* 332 Md. 454, 632 A.2d 151 (1993); *Fowler v. State,* 79 Md.App. 517, 527, 558 A.2d 446, *cert. denied,* 317 Md. 392, 564 A.2d 406 (1989).

Moreover, after Trooper Cameron discovered the sophisticated modifications to the air bag compartment that confirmed his belief that Harding's vehicle was transporting concealed contraband, the officer could reasonably suspect that other areas of the vehicle might also contain contraband. As this Court noted in *Whiting v. State,* 125 Md.App. 404, 415, 725 A.2d 623 (1999), "Many of the cases applying the *Carroll* doctrine have found probable cause to search the trunk of a

motor vehicle based on evidence apparent to a police officer after a search of the passenger compartment of the vehicle." *Cf. Nathan, supra,* 370 Md. at 666, 805 A.2d 1086 (evidence of a hidden compartment in ceiling of van, in combination with suspicious behavior, supported probable cause to search the vehicle for contraband); *State v. James, supra,* 87 Md.App. at 42, 589 A.2d 81 (evidence of drugs discovered during cursory search of vehicle justified "a more extensive automobile search," including the cavity behind a kick panel). *See also U.S. v. Turner,* 119 F.3d 18, 20–21 (D.C.Cir.1997)(discovery of drugs and drug paraphernalia in the passenger compartment of an auto provided probable cause for a search of the trunk for more narcotics).

In contrast to *State v. Bell,* 334 Md. 178, 186, 638 A.2d 107 (1994), in which "the only probable cause asserted by police was probable cause to believe that the single vial observed on the floor of the car contained contraband narcotics," Trooper Cameron had probable cause to believe that there was marijuana hidden at some unspecific location in Harding's truck. Additionally, before Cameron undertook the continued search that discovered the contraband in the spare tire, the officer had become aware that the subject vehicle had been modified in a very sophisticated manner (*viz.,* the remotely controlled hydraulic air bag cover) that gave the officer probable cause to believe there might be additional contraband hidden the truck. In further contrast to *State v. Bell,* in Harding's case, the State specifically relied on the authority of *Whiting v. State, supra,* at the suppression hearing. By doing so, the State preserved the argument that the continued search at the police barrack was authorized by the *Carroll* doctrine.

In short, the officers had probable cause to continue to search Harding's vehicle at the police station, and the motion to suppress the drugs found in the spare tire should have been denied.

### 6. A closing comment

In reversing the ruling of the circuit court in this case, we are mindful of the following comment by the Supreme Court

in *United States v. Ventresca, supra,* 380 U.S. at 111–12, 85 S.Ct. 741:

> This Court is alert to invalidate unconstitutional searches and seizures whether with or without a warrant. [Citations omitted.] By doing so, it vindicates individual liberties and strengthens the administration of justice by promoting respect for law and order. This Court is equally concerned to uphold the actions of law enforcement officers consistently following the proper constitutional course. This is no less important to the administration of justice than the invalidation of convictions because of disregard of individual rights or official overreaching. In our view the officers in this case did what the Constitution requires.

**DECISION OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY THAT GRANTED APPELLEE'S MOTION TO SUPPRESS EVIDENCE REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**